## PUBLICITY BUILDING REALTY CORPORATION et al. v. HANNEGAN, Collector of Internal Revenue, et al.
### No. 12666.

Circuit Court of Appeals, Eighth Circuit.

Dec. 28, 1943.

Taylor R. Young and Harry A. Frank, both of St. Louis, Mo. (Stephen A. Boggiano, Clem F. Storckman, Cullen Coil and Sigmund M. Bass, all of St. Louis, Mo., on the brief), for appellants.

John V. Lee, of St. Louis, Mo. (Lee, Fricke & Lee, of St. Louis, Mo., on the brief), for appellees Lee Hess, Estelle L. Hess, and June Estelle Hess, by Lee Hess, guardian ad litem.

W. B. Waldo, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellees Collector of Internal Revenue and the United States.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The appellants are cross-claimants in an interpleader action. Their cross-claims were dismissed, and they have appealed from the order and judgment of dismissal. The broad question presented is whether their pleadings raised any issues of fact or of law which entitled them to a trial.

The Travelers Insurance Company (hereinafter called "the Travelers"), as plain-

584

tiff, on June 16, 1941, filed a complaint in interpleader under the Interpleader Act of 1936, 49 Stat. 1096, 28 U.S.C.A. § 41(26). The complaint named Lee Hess, Estelle L. Hess, June Estelle Hess, the United States Collector of Internal Revenue, Publicity Building Realty Corporation (hereinafter called "Publicity"), and George C. V. Fesler, as defendants. The complaint showed that on March 6, 1934, the Travelers had issued two single-premium policies on the life of Lee Hess, one for $50,000, and one for $10,000; that Hess had paid $18,169.50 for the larger policy and $3,633.90 for the smaller one; that Estelle L. Hess, wife of the insured, and June Hess, his daughter, were the named beneficiaries; and that the policies provided for cash surrender values. The complaint further showed that, on or about July 30, 1934, Publicity, as a creditor of George C. V. Fesler, instituted an action against the Travelers and others in the Circuit Court of the City of St. Louis, Missouri, alleging that the policies had been purchased by Lee Hess with money belonging to Fesler; that, as a result, Fesler was entitled to the right, title and interest of the insured and of his wife and daughter in the policies; and that Publicity, as a creditor of Fesler, was entitled to have the cash value of the policies applied in payment of the indebtedness of Fesler to Publicity. The complaint further showed that Fesler filed an intervening petition in the State court action, asserting that the policies were purchased by Hess with the money of Fesler; that Fesler was entitled to the cash value of the policies and to have it applied upon his indebtedness to Publicity; and that the State court action is still pending and undetermined. The complaint further showed that there was filed with the Travelers a written assignment bearing date February 25, 1936, by which Lee Hess transferred his interest in the policies to Thos. H. Butler, Jr., and George A. Ryan; that on or about June 2, 1941, there were filed with the Travelers two written assignments dated January 27, 1938, and February 4, 1938, respectively, transferring the interests of Lee Hess and of Butler and Ryan in the policies to the United States Collector of Internal Revenue; that on June 2, 1941, the Collector surrendered the policies to the Travelers, demanding of it their cash surrender value, and served upon it a written notice of a tax lien for federal income taxes assessed against Lee Hess for the year 1934 for $19,267.47 and interest; and that the Col-

lector also served upon the Travelers a written notice of a levy and also a demand for payment and warrant of distraint. The complaint also showed that the cash value of the two policies on June 16, 1941, was $23,809.80, which the Travelers had paid into the registry of the court below; that the Travelers has and claims no interest in the policies, has no liability to the defendants except under the policies, and is a disinterested stakeholder. The prayer of the complaint was that the defendants be decreed to interplead and settle among themselves their rights or claims to the cash surrender value of the policies, and that the defendants be enjoined from prosecuting their claims in other courts.

Thereafter the appellants other than Publicity (which was named a defendant in the complaint) filed applications for leave to intervene, accompanied by their proposed cross-complaints stating their respective claims to the fund deposited in the registry of the court. These applications were granted. The United States was also permitted to intervene as a claimant to the fund. The Travelers was granted the relief prayed for in its complaint, on April 8, 1942, and a decree was entered requiring the defendants and interveners to interplead for the fund paid into court, less $400, the costs and attorneys' fees which were allowed to the Travelers.

The cross-claims of the appellants (including Publicity) asserted, in substance, that these cross-claimants were creditors of Fesler; that he on October 31, 1931, became a fugitive from justice and a nonresident of the State of Missouri; that he concealed his whereabouts so that he could not be reached by process; that Fesler conveyed all of his property to Lee Hess; that Hess agreed with Fesler to convert his property into cash and pay his debts; that, among other assets, Fesler owned a royalty contract for a deodorant; that from October 31, 1931, to February 16, 1934, Hess collected royalties upon this contract amounting to $21,273.30; that on February 16, 1934, Hess sold the contract for $100,-000, of which $65,000 was paid in cash; that part of this $65,000 was used to pay the single premiums for the life insurance policies in suit; that the money paid to the Travelers for those policies belonged wholly to Fesler; and that the cash surrender value of the policies is the money of Fesler and constitutes in effect a trust fund in which each of the appellants is entitled to participate.

Fesler filed an answer to the complaint of the Travelers and an interplea in which he asserted, in substance, that Lee Hess had fraudulently procured and appropriated Fesler's property and that the policies in suit were purchased by Hess with Fesler's money; that the subsequent assignments of the policies were not made to bona fide purchasers for value; that the assignees had full knowledge that the policies had been purchased with the money of Fesler; and that he is the equitable owner of the fund in suit and has an equitable lien thereon or right thereto superior to the claims of the Collector and of the United States. The prayer of Fesler's answer was for a decree that the fund be awarded to him. Fesler also filed a counterclaim against Lee Hess, Estelle L. Hess, June Hess, and William Hess, demanding an accounting for all of the proceeds of the property of Fesler converted by Lee Hess and held in trust for Fesler by Lee Hess and William Hess.

Issues were joined, and the case came on for hearing on June 12, 1942. Mr. Claud O. Pearcy, counsel for Fesler, announced that he was advised that his client intended to withdraw his claim to the deposited fund. Fesler was called to the witness stand and was examined. He testified that he did not desire to make any further claim to the fund; that he had informed his counsel of that fact that morning for the first time; that his desire to withdraw his claim had resulted from a conference between Lee Hess, Mr. Maher, counsel for the United States, and Fesler; and that Fesler's counsel was not a party to the conference. At that point, Mr. Pearcy notified the court that he withdrew from the case. Mr. Maher then examined Fesler, who testified that Maher did not make him "any promise of any money or anything", and that the conference was held at the suggestion of Lee Hess. We quote the remainder of Fesler's testimony:

"Questions by Mr. Young:

"Q. You and Mr. Hess made a settlement yesterday afternoon? A. No, sir.

"Q. You talked about an hour? A. That is all right; we didn't make a settlement.

"Questions by Mr. Pearcy:

"Q. Isn't it a fact, Mr. Fesler, that the District Attorney has told you you would be indicted for concealing certain information when you made a settlement with the Government for 1934 tax?

"The Witness: Do I have to answer that? I had a conversation with the District Attorney.

"Mr. Maher: You can answer for all of me. If you are going to quote me, quote me correctly. You can answer it here. A. We did have a conversation along that line.

"Q. Will you, for the benefit of the record, tell us what Mr. Maher said? A. He said he would try to prove that I had not divulged my true status in making settlement with the Government.

"Q. In what respect, Mr. Fesler? A. In respect to my income-tax claim.

"Q. As to misrepresentations as to your income in 1934? A. Yes, sir.

"Q. At the time you had settlement with them for income tax; for not making a return, or for making a false return? A. I didn't make the return at all; the return was made by the Government.

"Q. And this was, as I understand it, a statement to you that you would be prosecuted for your failure to give information with regard to the suit pending out here? A. No, sir; he said he would make every effort to show that I did that.

"Q. To show what? A. That I had misrepresented it.

"Questions by Mr. Maher:

"Q. Those were my exact words, that I would do my best to see you were prosecuted for making a false statement? A. Yes, sir.

"Q. I didn't say you would be indicted? A. No, sir. You said you would make every effort to do it.

"Questions by Mr. Young:

"Q. And that is the reason you are withdrawing your claim to this fund? A. Yes, sir.

"Mr. Young: That is all.

"Mr. Maher: I think the case might well be passed for a week or ten days.

"Mr. Young: We are not certain we are ready, in view of the changed situation. We were ready up until this morning.

"The Court: I am not sure when I can give you a setting on that.

"Mr. Young: I suppose the quicker the better suits us both?

"Mr. Maher: Yes, sir.

"Questions by Mr. Maher:

"Q. For the sake of the record, did I promise you would not be prosecuted? A. You said you would drop the case.

"Q. I said this case would be dropped? A. Yes, sir.

"Q. And did I make any promise about no prosecution? A. You said there would be nothing further to do about the case.

"Q. Because, then, it would not have been your money? A. Yes, sir.

"Q. I said there would be nothing to do because it would not have been your money that you concealed? A. That is right.

"Questions by Mr. Walsh:

"Q. What did you understand Mr. Maher to mean when he said there would be nothing further in the case if you withdrew? A. He said if I withdrew, the case would be dismissed and I would go on my way.

"Questions by Mr. Maher:

"Q. Did I say if you withdrew, or did I say if you got on the stand and told the truth about whose money this was? A. Yes, sir; that is right.

"Mr. Maher: There is a difference.

"Q. Didn't I say if this was Hess' money, then you didn't make any false statement in your income tax? A. Yes, sir.

"Mr. Maher: That is all."

On September 17, 1942, the Collector of Internal Revenue and the United States filed motions to dismiss the cross-claims of all of the appellants, on the grounds: (1) That they fail to state claims against the fund upon which relief can be granted; (2) that they show no legal or present interest in the fund at the time it was deposited in court; (3) that the claimants take, if at all, through the interest of Fesler and have only unliquidated demands against him, and that Fesler's claim has been eliminated from the case; (4) that the claims of the appellants are between them and Fesler and have no direct relation to the controversy over the ownership of the fund as between Fesler and Hess; (5) that the appellants show that they have no liens of any kind on the fund; (6) that the court should not be required to decide the liability of Fesler to the appellants, since, if such liability were established, no right of the appellants superior to that of the Collector and the United States would exist; (7) that the claims of the appellants could not have been asserted in an independent suit in the District Court, since Fesler resides outside of the district; that, unless the claimants have liens upon the fund, they should not be permitted to assert claims against Fesler in a suit in which he was an involuntary party, and that a determination of the claims against Fesler would deprive him of his constitutional right to a trial by jury.

The District Court, without an opinion and without assigning any reasons therefor, granted the motions to dismiss and decreed that the appellants have no right, title, interest or claim in or to the fund in the registry of the court.

It is apparent that the real parties in interest in this case now are: Lee Hess, who desires to have the fund applied in payment of his liability to the United States for income taxes; the United States, which is endeavoring to obtain the fund to satisfy its unpaid assessment for taxes against Hess; and the creditors of Fesler, who are asserting an equitable right to have the fund, which they assert belongs to Fesler, applied to the payment of their claims against him.

The weakness of the position of the Collector of Internal Revenue and the United States is that their motions to dismiss admit that the appellants have the claims which they have asserted, and deny only the power of the court to grant the relief prayed for by the appellants. Leimer v. State Mut. Life Assur. Co., 8 Cir., 108 F. 2d 302, 305; Donnelly Garment Co. v. International Ladies' Garment Workers Union, 8 Cir., 99 F.2d 309, 316.

This Court has repeatedly said that a motion to dismiss a complaint should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. Leimer v. State Mut. Life Assur. Co., supra, at page 306 of 108 F.2d; Sparks v. England, 8 Cir., 113 F.2d 579, 581, 582; Cohen v. United States, 8 Cir., 129 F.2d 733, 736; Louisiana Farmers' Protective Union, Inc. v. Great Atlantic & Pacific Tea Co., 8 Cir., 131 F.2d 419, 423, 424; Musteen v. Johnson, 8 Cir., 133 F.2d 106, 108.

Rule 22(2) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that actions brought under § 24(26) of the Judicial Code as amended, Title 28 U.S.C.A. § 41(26), shall be conducted in accordance with those Rules. The Federal Rules of Civil Pro-

cedure do not sanction the disposition of doubtful issues of fact or law upon motions to dismiss for insufficiency of pleadings. The Rules contemplate a determination of all such issues by the trial court after a hearing, and that the trial court shall make findings of fact and conclusions of law, to the end that the parties to the litigation and the reviewing court may know the exact factual and legal basis for the trial court's decision. This, of course, does not mean that if it is certain that a plaintiff has no claim which entitles him to relief, the District Court is obliged to hold a trial. If it clearly appears from a complaint that a trial of the claim asserted will be futile, the court is not required to proceed further. But even in such a case, unless the reason for the dismissal of a complaint is obvious, we think that the court should state the grounds upon which it relies in ordering the dismissal.

Some of the questions which are involved in this appeal are: (1) Did the appellants who are interveners have an absolute, or merely a discretionary, right to intervene? (2) If their right to intervene was discretionary, did their elimination from the case by a dismissal of their cross-complaints amount merely to a revocation of leave to intervene? (3) Have the creditors of an adverse claimant who are asserting an equitable right to have his interest in the fund deposited by the stakeholder applied to the payment of their claims, a right to interplead when they have not obtained judgments against their debtor and have not established liens upon the fund prior to the commencement of the interpleader action? (4) Must the claimants in an interpleader action have a present legal right, title or interest in the fund in order to interplead? (5) Does the commencement of an interpleader suit cut off or impair the rights of a creditor of an adverse claimant when that creditor is prosecuting proceedings in the State court for the purpose of obtaining a judgment against the adverse claimant and establishing a lien upon the fund in suit? (6) Do the creditors of an adverse claimant who are attorneys claiming to have acquired a lien under the laws of Missouri upon the fund because of services rendered to an adverse claimant prior to the institution of the interpleader action, have a right to intervene and interplead therein as lienholders? (7) Do the creditors of an adverse claimant who assert that they are beneficiaries of a trust created by him in the fund in suit, have a right to interplead when the amounts of their claims are unliquidated? (8) Do the creditors of an adverse claimant and the beneficiaries of a trust allegedly created by him lose whatever rights they might otherwise have in the fund if the adverse claimant on the eve of trial disclaims any interest in the fund? (9) If a voluntary disclaimer by the adverse claimant will destroy any rights which his creditors may have to the fund, will an involuntary disclaimer coerced by counsel for another adverse claimant likewise destroy such rights?

An attempt by this Court to rule upon these issues of law, which have not been tried below, and which require the assumption of a factual situation as favorable to the appellants as can reasonably be conceived in view of their pleadings, would not be justified. As already pointed out, we do not know upon what rule or rules of law the trial court relied in dismissing the appellants' cross-complaints. It is elementary that appellate courts will not ordinarily consider questions not passed upon by the trial court. Many of the issues of law presented are important questions relating to the present statutory remedy of interpleader. Compare Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206, 91 A.L.R. 950. We are satisfied that these issues should not be decided upon a hypothetical state of facts. A trial may disclose that the appellants have no rights to the fund, or that whatever rights they have are not enforceable or are inferior to those of the United States. The appellants, however, are presently contending that Lee Hess never beneficially owned the policies the surrender value of which constitutes a fund which they seek to have applied to the payment of their claims; that the interest acquired by the United States from Hess was nothing more than a naked legal title; that under the law the fund belongs to Fesler; that in equity it ought to be awarded to the appellants as his creditors and as beneficiaries of a trust created by him; and that the abandonment by Fesler of his claim to the fund, particularly under the circumstances disclosed by the record, could not affect their rights to have the fund distributed to them.

While we shall not, upon this appeal, express any opinion as to the merits of this case, we consider it important that the usefulness of the statutory remedy of

588

interpleader, which has been greatly liberalized by the Interpleader Act of 1936 and by Rule 22 of the Federal Rules of Civil Procedure, shall not be impaired by narrow and restrictive rulings which might prevent bona fide claimants, with meritorious claims to a fund deposited by a stakeholder, from securing an adjudication of their rights. If persons having or claiming interests in a fund are to be enjoined, in an interpleader action, from proceeding in other courts to establish or to enforce their claims against the fund, it would seem that the one court remaining open to them should afford them a fair opportunity to establish the basis for their claims, and give due consideration to their assertions that their rights are superior to those of other claimants. We think that the appellants should be permitted to prove, if they can, that the policies in suit never belonged to Lee Hess, that the Collector of Internal Revenue and the United States acquired from him no interest in the fund in suit, and that the appellants are entitled to have the fund distributed to them. If the appellants' assertions are correct, the dismissal of their claims would result in the Government's receiving the fund, not upon the strength of its claim but upon the weakness of their claims.

· The order and judgment appealed from is reversed, and the case is remanded with directions to reinstate the appellants' cross-claims and to try the issues thereby presented upon the merits.