**PUBLICITY BLDG. REALTY CORPORATION et al. v. HESS et al.**

**No. 13630.**

Circuit Court of Appeals, Eighth Circuit.

April 2, 1948.

Rehearing Denied April 26, 1948.

. Stephen A. Boggiano and Harry A. Frank, both of St. Louis, Mo. (Boggiano & Hessel, Taylor R. Young, and Sigmund M. Bass, all of St. Louis, Mo., on the brief), for appellants.

John V. Lee, of St. Louis, Mo. (Lee, Fricke & Lee, of St. Louis, Mo., on the brief), for Lee Hess, appellee.

William B. Waldo, Sp. Asst. to Atty. Gen., for the United States and Collector of Internal Revenue, on motion to dismiss.

Before GARDNER, THOMAS, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This action involves a dispute between claimants to approximately $23,000 on deposit in the registry of the District Court. That fund was brought into court by the plaintiff Travelers Insurance Company by the filing of an interpleader action which alleged that conflicting claims were being made for the cash surrender value of two single premium insurance policies issued by plaintiff on the life of Lee Hess. A decree of interpleader was entered permitting the payment into court of the cash surrender value of the policies and the retirement of the Insurance Company from the litigation. Thereafter the action was dismissed on motion resulting in an appeal to this court by one group of claimants and the remand of the cause for hearing on the merits. See Publicity Bldg. Realty Corporation v. Hannegan, 139 F.2d 583. The pleadings are rather numerous and lengthy. Since they were analyzed in detail in our opinion on the former appeal, it is unnecessary to repeat that analysis here.

In 1931, George C. V. Fesler, a resident of the City of St. Louis, Missouri, was the owner of a valuable royalty contract and other property. Becoming involved in personal difficulties and fearing criminal prosecution by the State authorities, he gave to his business associate and long time friend, Lee Hess, papers signed in blank which Hess was to use in such manner as he deemed necessary to carry on Fesler's business affairs, and particularly the collection of royalties accruing under the royalty

contract. Fesler then departed from the State of Missouri and became a fugitive from justice. Hess filled in one of the papers as a power of attorney. Another, he filled in as an assignment to him of the royalty contract and all of Fesler's rights therein. Hess collected the royalties from the date of Fesler's flight in October, 1931, until February, 1934. During that time Hess supplied Fesler and his relatives with funds and looked after Fesler's business affairs. In February, 1934, Hess sold the royalty contract for $65,000 in cash and the surrender of a note upon which Fesler owed approximately $30,000. It appears that Fesler and Hess discussed this sale prior to the time it was made. There is a conflict in the evidence as to whether Fesler knew how much was actually obtained. After the sale was consummated, Hess met Fesler in New Orleans and gave him over $20,000 (Fesler says $20,500.00, Hess, $22,-500.00). At that time Fesler was entirely satisfied with the amount he received. On March 6, 1934, Hess purchased the two insurance policies heretofore mentioned, making his wife and daughter beneficiaries. Hess used a portion of the proceeds of the sale of the royalty contract for the purchase of these insurance policies. Fesler had, in the meantime, incurred obligations for attorney fees in connection with the criminal charges pending against him. In addition to those obligations, other claims were outstanding against him. A creditors' bill was filed in the State courts of Missouri, seeking to establish and enforce these obligations. At about that time Hess became involved in a dispute with the Internal Revenue Collector at St. Louis, wherein the Government was demanding a large amount of income taxes from Hess. To secure the Government's claim for income taxes, the amount of which Hess was protesting, Hess assigned the insurance policies to the Collector in his official capacity representing the United States, and authorized the surrender of the policies for their cash surrender value. The Insurance Company was brought into the State court proceedings wherein it was charged that the policies did not belong to Hess, had been purchased with funds belonging to Fesler, and that the cash surrender value

thereof should be subjected to the payment of Fesler's debts. Fesler, becoming dissatisfied with his settlement with Hess at New Orleans, returned to Missouri to join in the State court action. He was promptly arrested on the criminal charges and incarcerated. While confined he executed an intervening claim in the State court proceedings wherein he asserted ownership of the funds with which the insurance policies had been purchased and the right to the proceeds of the surrender value of, the policies. The attorneys who were representing Fesler in the civil action with Fesler's approval arranged for Mr. Sigmund M. Bass to represent him in the criminal case. Mr. Bass was to be paid $1000 from the recovery by Fesler of the cash surrender value of the insurance policies or, if there was no recovery thereof, by Fesler at such time as he had the funds. Mr. Fesler appears to have been well represented in the criminal proceedings. They were disposed of by the payment of a small fine. Thereafter, Fesler changed his mind about proceeding against Hess in that action and withdrew his claim against Hess. Later, when this action was filed he became a party and again asserted a right to the proceeds of the insurance policies but again in open court withdrew that claim and testified in this cause that he was satisfied with the settlement made at New Orleans.

Confronted with conflicting claims for the cash surrender value of the insurance policies, the Insurance Company filed this action and secured an injunction in the District Court protecting it from further proceedings in the State court. The State court action resulted in a judgment in favor of the Publicity Building Realty Corporation. See Publicity Bldg. Realty Corporation et al. v. Thomann et al., 353 Mo. 493, 183 S.W.2d 69.

In our former opinion it was stated [139 F.2d 586]:

"It is apparent that the real parties in interest in this case now are: Lee Hess, who desires to have the fund applied in payment of his liability to the United States for income taxes; the United States, which is endeavoring to obtain the fund to

satisfy its unpaid assessment for taxes against Hess, and the creditors of Fesler, who are asserting an equitable right to have the fund, which they assert belongs to Fesler, applied to the payment of their claims against him.

\*　\*　\*　\*　\*　\*

"The appellants, however, are presently contending that Lee Hess, never beneficially owned the policies, the surrender value of which constitutes a fund which they seek to have applied to the payment of their claims; that the interest acquired by the United States from Hess was nothing more than a naked legal title; that under the law the fund belongs to Fesler; that in equity it ought to be awarded to the appellants as his creditors and as beneficiaries of a trust created by him, and that the abandonment by Fesler of his claim to the fund, particularly under the circumstances disclosed by the record, could not affect their rights to have the fund distributed to them.

\*　\*　\*　\*　\*　\*

"We think that the appellants should be permitted to prove, if they can, that the policies in suit never belonged to Lee Hess, that the Collector of Internal Revenue and the United States acquired from him no interest in the fund in suit, and that the appellants are entitled to have the fund distributed to them."

On the trial on the merits the trial court heard and determined the cause on those issues. It found that Hess had the right to use the funds he did use for the purchase of the insurance policies; that the policies belonged to Hess; and that the United States had established its claim against Hess for an amount, with interest, exceeding the amount on deposit in the registry of the court. Judgment was entered barring and foreclosing the claims of Fesler's creditors and directing the payment of the entire fund to the United States.

Appellants succinctly state the primary issue involved on this appeal as follows:

"The primary issue to be determined by this Court is whether the insurance policies issued by the Travelers Insurance Company on the life of the defendant Lee Hess, the cash surrender value of which

constitutes the fund on deposit in the registry of the Court, belongs to and is the property of defendant Hess, or whether said policies of insurance were wrongfully and unlawfully purchased by Hess with trust funds belonging to the defendant George C. V. Fesler, and for that reason belongs to and is the property of Fesler.

"If the policies of insurance are determined by the Court, after a review of all the evidence, to belong to and be the property of the defendant Hess, then the defendant the U. S. Collector of Internal Revenue and the Intervenor United States of America are entitled to the fund on deposit in the registry of the Court to satisfy the Government's tax claim against the defendant Hess, and are entitled to said fund by further reason of the assignment of said policies of insurance by and through the defendant Hess to the Collector of Internal Revenue to secure the payment of said tax claim. \* \* \*"

The trial court made detailed findings of fact, stated its conclusions of law, and filed a memorandum opinion. Finding 19 of that court goes directly to the very crux of the issue before us. That finding is as follows:

"19. The fundamental question in this case is the one of fact which the Circuit Court of Appeals referred to in this language:

"We think that the appellants should be permitted to prove, if they can, that the policies in suit never belonged to Lee Hess, that the Collector of Internal Revenue and the United States acquired from him no interest in the fund in suit, and that the appellants are entitled to have the fund distributed to them.

"The Court finds that the parties claiming under Fesler have not proved that the policies never belonged to Hess; to the contrary, the Court finds that they did belong to him; that at all times after they were issued he had a property right in the policies and in the surrender values."

Other findings of the trial court buttress the foregoing factual conclusion.

■ Appellants seek to overthrow the trial court's finding on the ground that it

is unwarranted by the evidence. This court has no right to overthrow the findings of the trial court unless they are clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Sprague v. Vogt, 8 Cir., 164 F.2d 312, 313.

We have examined the record thoroughly. Questions of veracity and the weight to be given to portions of the parol testimony were not absent from the problems of the trial court. It is unnecessary and will serve no good purpose to review the evidence in detail. It is sufficient to state the conclusion we reach. That conclusion is that there is ample justification in the record for the trial court's findings and that they cannot be held to be clearly erroneous. Under those circumstances we are not at liberty to disturb them.

Appellants contend that equity will follow the proceeds of the sale of the royalty contract as trust funds into the insurance policies; that when trust funds have been traced and identified in the insurance policies in the hands of Hess, as trustee, then it became the burden of the trustee Hess to satisfactorily account and prove his interest and the right to use the funds.

The fallacy of that position is that the factual premise upon which those legal principles are based is destroyed by the finding of the trial court that Hess had the right to use the funds with which the policies were purchased. That being true neither the funds with which the policies were bought nor the policies became trust property.

Appellants contend that the trial court improperly cast the burden on them to prove that Hess did not have the right to use trust funds for his personal use. This contention presupposes that the funds with which the policies were purchased were trust funds. A statement in the trial court's opinion "that the claimants under Fesler have not carried the burden to negative the right of Hess to act as he did" constitutes the basis for this contention. When that statement of the trial court is read with the finding heretofore quoted, it is clear that the court was referring to the burden of the claimants to show that the money used to purchase the policies was trust property. That burden was upon the appellants, and until that fact was established the burden of accounting for this money was not upon Hess. There was ample evidence to justify the conclusion reached by the court below that Fesler was satisfied that Hess should keep what he did keep of the proceeds of the sale of the royalty contract. The finding indicates that the trial court actually concluded that the greater weight of the evidence showed Hess's right to the money and that it was not trust property. Hence the rules of law asserted by appellants have no application under the facts of this case.

After notice of appeal had been filed but prior to the docketing of the cause in this court, Hess compromised, settled and paid the tax claim. The United States thereupon obtained an order from the District Court permitting it to withdraw its intervening petition and acknowledge satisfaction of the tax claim. At the same time Hess obtained an order from that court directing the clerk to disburse the fund on deposit to him. Appellants then appeared in the District Court and requested that the two foregoing orders be set aside. In the meantime the cause had been docketed on appeal. The District Court therefore deferred action on appellants' request pending an application to this court for a supersedeas, indicating however that if the supersedeas was granted an order would be made setting aside the orders permitting the United States to withdraw its intervening petition and directing the clerk to pay the fund to Hess. Application for supersedeas was then filed in this court in which it was alleged that the fund had been paid to Hess. That application was denied prior to the hearing of the appeal. The United States and the Collector then filed a motion to dismiss the appeal as to them. That motion was submitted at the time the case was argued, was taken under advisement, and remains undisposed of.

In view of our affirmance of the result reached by the trial court the motion to dismiss the appeal as to the United

States and the Collector becomes unimportant. For the purpose of maintaining an orderly record, it is sustained.

■ Although it appears from Appellants' application for supersedeas that the fund has been paid to Hess, the formal judgment having been entered upon the undisputed hypothesis that the tax claim was valid and exceeded the amount of the fund, the judgment made no alternative provision for the payment of the fund to Hess. The judgment should therefore be formally modified to direct the clerk to pay the fund to Hess. As so modified the judgment will be affirmed.