**HIGHLAND SUPPLY CORPORATION,**
**Appellant,**

v.

**REYNOLDS METALS COMPANY, a Corporation, Appellee.**

**No. 17431.**

United States Court of Appeals
Eighth Circuit.

Feb. 13, 1964.

726

Alex Akerman, Jr., Thomas A. Ziebarth, Washington, D. C., John C. Kappel and Robert E. Staed, for appellant, Kappel & Neill, St. Louis, Mo., and Shipley, Akerman & Pickett, Washington, D. C., of counsel.

Lewis C. Green, Alan G. Kimbrell, Green, Hennings, Henry, Evans & Arnold, St. Louis, Mo., for appellee, Gustav B. Margraf and W. Tobin Lennon, Richmond, Va., of counsel.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

This is an appeal from a judgment dismissing with prejudice the complaint of appellant,[1] based on Section 4 of the Clayton Act (15 U.S.C.A. § 15), alleging violations of Section 7 of the Clayton Act (15 U.S.C.A. § 18) and Section 2

1. Highland Supply Corp. v. Reynolds Metals Co., 221 F.Supp. 15 (E.D.Mo.).

of the Sherman Act (15 U.S.C.A. § 2). The facts giving rise to such claims are not in dispute. They may be summarized as follows:

Appellant's complaint was filed on February 14, 1963. It alleged that appellee, on August 31, 1956, acquired control of the stock and assets of Arrow Brands, Incorporated, thereby achieving vertical integration between the two companies. Prior thereto Arrow had been engaged almost exclusively in the conversion, design, styling and sale of florist foil. Reynolds, one of the three producers of primary aluminum in the United States, had been Arrow's chief supplier of aluminum foil, which Arrow converted into florist foil. Subsequently, in November 1957, Arrow announced an across-the-board price reduction in its major brands of florist foil, effective retroactively to October 1, 1957. These prices were below the cost of production of Arrow's non-integrated competitors. Appellant alleged that as a consequence Arrow's competitors,[2] of which appellant is one, "began to really feel the effects of Reynolds' attempted monopolization" and were "caused to suffer significant loss of sales."

On December 27, 1957, the Federal Trade Commission issued a complaint against Reynolds, alleging that its acquisition of Arrow violated Section 7 of the Clayton Act, supra. An order of divestiture was issued by the F.T.C. on January 21, 1960. That order as modified was affirmed by the United States Court of Appeals for the District of Columbia. Reynolds Metals Company v. Federal Trade Commission, 114 U.S.App.D.C. 2, 309 F.2d 223 (1962). A final decree of enforcement of the F.T.C. order was entered by that Court on October 22, 1962.

The "effects of (Reynolds') *acquisition* and *subsequent actions*" were alleged by appellant to have permitted Reynolds:

(a) to monopolize and substantially lessen competition in the florist foil market, thereby depriving the public of the benefits of a free competitive market within this line of commerce;

(b) to allow Arrow to achieve a dominant position in the florist foil market;

(c) cause appellant to lose some customers altogether and suffer substantially lower sales to others;

(d) prevent appellant from continuing its normal increase of sales;

(e) to operate at a substantially lower level of profit;

(f) damage its prestige and reputation in the community and industry; and

(g) prevent it "from continuing in or initiating certain new ventures at substantial monetary loss"

for all of which appellant prayed treble damages.

Appellee filed no answer to appellant's complaint, but moved to dismiss the same on the grounds (1) that it failed to state a claim upon which any relief could be granted; and (2) that appellee's claims were barred by 15 U.S.C. § 15b. The District Court granted that motion. In so doing, it ruled that appellant's private antitrust claims against appellee accrued more than four (4) years prior to the date on which appellant *first* had the right to bring an action therefor; and as a consequence all such claims were barred by Section 4B of the Clayton Act, supra. The District Court reasoned that though appellant's:

"cause of action (did) not necessarily ripen at the time of (Reynolds') acquisition (of Arrow), reference must be made to the violation charged, 15 U.S.C.A. § 18, to determine whether more than one subsequent action after the acquisition can give rise to successive claims by

---

**2.** Since the decision in Radiant Burners, Inc. v. Peoples Gas, etc., Co., 364 U.S. 656, 660, 81 S.Ct. 365, 5 L.Ed.2d 358 (1960), it is not necessary to allege injury to the public in a private treble damage action.

the plaintiff (appellant) under 15 U.S.C.A. §§ 15, 18. Since § 18 prohibits only the acquisition with the potential proscribed effects, it follows that there is only *one event subsequent to the acquisition* which marks the time plaintiff's cause of action accrues. That event is the *first* suffering of injury as the result of the alleged prohibited merger. Hence, *even though plaintiff may continue to suffer damages* as a result of the acquisition, his (sic) failure to enforce his (sic) claim within four years after he (sic) *first* suffered injury from the prohibited merger will bar his (sic) cause of action based on a violation of 15 U.S.C.A. § 18." (Emp. & par. added.)

 From the foregoing it appears that the "acquisition" of Arrow and the latter's "price-cutting" were the only events considered by the District Court as being related to appellant's claim for damages, and that such damages were primarily based on appellee's violation of Section 7 of the Clayton Act, supra.[3] From that vista it ruled that the applicable statute of limitation as to any damages so claimed, commenced to run from the time those two overt acts were committed by appellee; and "that neither the FTC order nor the Court of Appeals affirmance" thereof "would be admissible

in this private treble damage action" so as to toll the four-year statute of limitation as provided in Section 4B of the Clayton Act (15 U.S.C.A. § 15b.)

 As to appellant's claims based on appellee's violation of Section 2 of the Sherman Act, the District Court said:

"Leave conceivably could be granted plaintiff to amend his (sic) petition * * * (as to) his claim based on the violation"

thereof; but because it considered the major matter before it involved:

" * * * questions of law on which there is substantial ground for difference of opinion and determination of these will materially advance the ultimate termination of (this) lawsuit * * *."

it "determined to dismiss with prejudice the entire complaint to afford" appellant an opportunity to have this Court make decision of the following four questions, which it said it had "determined * * * adverse to (appellant)":

"1. Whether the FTC order of divestiture and review and affirmance by the Court of Appeals for the District of Columbia taken together or separately qualify under 15 U.S.C.A. § 16(b) to toll the limitation period.

3. We think that any effort to convert Section 7 of the Clayton Act into a *per se* violation of the anti-trust laws so as to give rise to a private right of action under the Clayton Act has been squarely checked by what is said by Mr. Chief Justice Warren in Brown Shoe Co. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510. As interpreted in that case, Section 7 of the Clayton Act does not condemn all mergers, but only those having demonstrable anti-competitive effects. The statute deals with clearcut menaces to competition, not with accomplished monopolies, presently creating damage to a competitor, which is the *sine qua non* of a private right of action under Section 5 of the Clayton Act.

Section 7 of the Clayton Act was intended to supplement the Sherman Act and:

"primarily to arrest apprehended consequences of intercorporate relationships before those relationships could work their evil, which may be at or any time after the acquisition, depending upon the circumstances of the particular case."

United States v. du Pont & Co., 353 U.S. 586, at 597, 77 S.Ct. 872, 1 L.Ed.2d 1057. See this same case, 366 U.S. 316, 325–329, 81 S.Ct. 1243, 6 L.Ed.2d 318. That no private right of action accrues from such a violation, see: Independent Iron Works, Inc. v. United States Steel Corp., 322 F.2d 656 (9 Cir. 1963); United States v. Continental Can Co., D.C., 217 F.Supp. 761, 767 (1963); United States v. Ingersoll-Rand Co., et al., 218 F.Supp. 530 (W.D.Penna.1963), aff'd 320 F.2d 509 (3 Cir. 1963); Gottesman v. General Motors Corp., 221 F.Supp. 488 (S.D. N.Y.1963).

"2. Whether either the FTC order of the Court of Appeals for the District of Columbia's decree enforcing that order taken together or separately, may be used as prima facie evidence that the defendant has violated the antitrust laws under the requirements as set forth in 15 U.S.C.A. § 16(a).

"3. Whether there is but one and only one accrual of a cause of action under 15 U.S.C.A. § 15 as based on a violation of 15 U.S.C.A. § 18.

"4. And finally whether a petition under 15 U.S.C.A. § 15 based on a violation of 15 U.S.C.A. § 2 states a claim when the last action of defendant alleged to have caused the damage is shown on the face of the petition to have occurred more than four years prior to the filing of the complaint."

The abstractness of the questions ante is made manifest when it is considered that all we have before us in the record of this appeal is a copy of appellant's complaint; the motion to dismiss; judgment entered thereon; and a copy of the District Court's memorandum opinion, supra. Apparently, no pre-trial conference procedure was resorted to by the District Court.[4] Such disposition of pending litigation is not to be commended. This is so because only judgments, decrees and specific rulings—not opinions or reasons for final action taken by a District Court in a given case—are reviewable by us. This is not an interlocutory appeal allowed by us under 28 U.S.C.A. § 1292(b). The statements and questions ante which the District Court indicates to be the premise of its judgment cannot control any error appearing on the face of a record reviewable by us. Matters which a trial court states are the premise of its judgments but are not shown to have actual bearing upon the final judgment entered, will ordinarily be disregarded by an appellate court. It is a uniform course of appellate review procedure to decline to review questions not necessary to a decision by an appellate court. Cf. Dick v. New York Life Ins. Co., 359 U.S. 437, 445, 79 S.Ct. 921, 3 L.Ed.2d 935. Hence if, on appeal, we determine that a controlling and decisive point necessitates a reversal of a particular judgment, we ordinarily will decline to go further into the case. Sun Insurance Office v. Scott, 284 U.S. 177, 52 S.Ct. 72, 76 L.Ed. 229.

■ Here, the District Court dismissed, with prejudice, not only claims asserted by appellant because of appellee's violation of Section 7 of the Clayton Act, but also those based on appellee's alleged violation of Section 2 of the Sherman Act, supra. This was error, as we have nothing in the record before us revealing that appellant was ever given an opportunity to amend its complaint, and that it failed to do so before the order of dismissal was entered. Appellant, in its brief, states "the lower court suggested it could," but nowhere does it appear of record that appellant refused so to do. The right of amendment is to be freely given. Rule 15, F.R.Civ.P., 28 U.S.C.A. Only where a plaintiff fails to comply with an order to amend its complaint is dismissal with prejudice proper. Cf. Package Machinery Co. v. Hayssen Mfg. Co. (E.D.Wis.), 164 F.Supp. 904, aff'd (7 Cir.), 266 F.2d 56. As Judge Sanborn for this Court has reiterated in our most recent opinion, Burndy Corporation v. F. L. Cahill and National Connector Corporation, 301 F. 2d 448, l.c. 449 (8 Cir. 1962):

"The attitude of this Court toward attempts to terminate litigation believed to be without merit, by dismissing a complaint for insufficient statement has been adequately stated in Publicity Building Realty Corp. v. Hannegan, 8 Cir., 139 F.2d 583,

---

4. Seemingly, had pre-trial procedure been followed and a record thereof made, we would be informed of some facts which the District Court apparently considered pertinent when it came to prepare its memorandum opinion.

586–587, and restated in Lada v. Wilkie [8 Cir., 250 F.2d 211], supra, at pages 212–213 of 250 F.2d. No matter how reasonably it may be surmised or predicted that a plaintiff will be unable to establish on a trial the claim stated in his complaint or to obtain any relief, he is, nevertheless, entitled to make ·the attempt unless it appears beyond doubt that he can prove no set of facts in support of his claim which would entitle him to any relief. Conley v. Gibson [355 U.S. 41], supra, at pages 45–48 of 355 U.S., at pages 101–103 of 78 S.Ct. [2 L.Ed.2d 80]."

See, Thomason v. Hospital T. V. Rentals, Inc. (8 Cir.); 272 F.2d 263, 266; also, Dennis v. Village of Tonka Bay, 8 Cir., 151 F.2d 411.

■ Appellant argues that since reference is made in its complaint to certain F.T.C. proceedings commenced against appellee and the timing of orders entered therein; facts are thereby alleged revealing the tolling ˙ of the statute of limitation in respect to any Clayton Act claim asserted by it. Such contention may be related to the judgment of dismissal here under review. Therefore, we must decide whether an F.T.C. proceeding is within the ambit of Section 5 of the Clayton Act, supra. To provide us with an answer to that question, these parties (particularly appellee) treat at length with the legislative history of Section 5, ante, as amended. 15 U.S.C.A. § 16. In the light of controlling authority, we can find no ambiguity in the terms "civil or criminal proceedings" as used in that section of the Clayton Act, as these parties apparently do. Hence, "we do not inquire what the legislature meant· (by use of such terms); we ask only what the statute means." (Holmes, Collected Legal Papers, 207.) As Mr. Justice Jackson has stated: "Resort to legislative history is only justified where the face of the Act is inescapably ambiguous." Schwegmann Bros. v. Calvert Corp., 341 U.S. 384, 395, 71 S.Ct. 745, 95 L.Ed. 1035, con. op. See, also, Soon Hing v. Crowley, 113 U.S. 703, 710, 5 S.Ct. 730, 28 L.Ed. 1145. Consequently we do not follow these parties in their presentation as to the legislative history of either Section 5(b) or 7 of the Clayton Act, supra.

Two recent District Court decisions, providing dissimilar answers to the questions here considered, are cited as being persuasively in point. Appellant relies on New Jersey Wood Finishing Co. v. Minnesota Mining & Mfg. Co., 216 F. Supp. 507 (D.C.N.J.1963). Appellee cites Farmington Dowel Products Co. v. Forster Mfg. Co., Inc., et al., 223 F.Supp. 967 (D.C.Maine, 1963). In the New Jersey Wood Finishing Co. case ante, the District Court for New Jersey ruled that Section 5(b) of the Clayton Act was applicable to a private damage suit during pendency of an F.T.C. proceeding. In the Farmington Dowel Products Co. case, supra, the District Court for the District of Maine held to the contrary;—that an F.T.C. proceeding did not come within the statutory language ·of Section 5(b). Appellant's reliance on the New Jersey Wood Finishing Co. case, supra, is of doubtful authority because of Judge Augelli's reliance upon Brunswick-Balke-Collender Co. v. American Bowling & Billiard Corp., 150 F.2d 69 (C.A.2). See opinion of District Judge Taylor (E.D. Tenn.) in Volasco Products Co. v. Lloyd A. Fry Roofing Co., 223 F.Supp. 712.

In the Brunswick-Balke-Collender case, supra, a majority of a panel of the Second Circuit Court of Appeals first ruled that an order of the Federal Trade Commission was a "final judgment or decree" as being rendered in a civil or criminal proceeding " * * * brought by or on behalf of the United States under the antitrust laws * * *" and held the same to be admissible within the purview of Section 5 of the Clayton Act, supra. However, on petition for rehearing, the same panel subsequently decided (150 F.2d l. c. 74) that an order of the Federal Trade Commission was not of that legal effect and was correctly excluded from evidence. That the decision of the Second Circuit Court of Appeals, entered after rehearing in Brunswick-Balke-Collender

Co., supra, is the proper legal concept of an administrative agency order entered by the F.T.C., is established by what is said in Samson Crane Co. v. Union National Sales, 87 F.Supp. 218 (D.C.Mass.), as follows:

> "The Federal Trade Commission Act while declaring certain acts and practices unlawful, gives no right of action to private litigants based on such unlawful acts. The Federal Trade Commission is set up to enforce the provisions of the Act, and relief from alleged violations must be sought from the Commission in the first instance and not from the courts." (87 F.Supp. l. c. 221.) Affirmed * * * "Per Curiam * * * on the * * * opinion by Ford, D. J." Samson Crane Co. v. Union National Sales, Inc., 1 Cir., 180 F.2d 896.

See also: Federal Trade Commission v. Eastman Kodak Co., 274 U.S. 619, 623, 624, 47 S.Ct. 688, 71 L.Ed. 1238 (1927); Federal Trade Commission v. Cement Institute, 333 U.S. 683, 706, 68 S.Ct. 793, 92 L.Ed. 1010 (1948).

■ Since Section 5 of the Clayton Act has "no application to an order * * * of the Federal Trade Commission" (Toulmin, Anti-Trust Laws, Vol. 2, p. 118; Proper v. John Bene & Sons, Inc. (D.C.N.Y.), 295 F. 729), we hold that any reference made to the F.T.C. proceedings in the instant complaint was insufficient to toll the statute of limitation as provided in that Act, supra. As said by District Judge Wyzanski, in United States v. United States Shoe Machinery Corp., 89 F.Supp. 349, 356 (D.C. Mass.1950):

> "The Commission's cease and desist order may in many cases be as drastic as the decree of a District Court except for the one point that the District Court's decree *unlike the Commission's order* can be used as prima facie evidence in a private treble damage suit." (Emp. added.)

■ Be that as it may the District Court in the case at bar, deeming Reynolds' "acquisition" of Arrow and the date of the latter's "price reduction" as the two overt acts which could give rise to a private claim for damages by appellant, dismissed all its claims, with prejudice. This, solely on the ground that such overt acts occurred more than four years prior to the commencement of the instant action. Appellant's complaint, liberally construed (as it should be under Rule 8 (f), F.R.C.Pro., 28 U.S.C.A.), makes claim for damages because of appellee's violation of Section 2 of the Sherman Act, supra, during the entire time that Reynolds possessed monopoly power. The statute of limitation in respect to a private right of action under Section 5(b) of the Clayton Act, supra, "beg(ins) to run when the cause of action (arises), and the cause of action (arises) when the damage occur(s)." Then only can the action be brought. Bluefields S. S. Co. v. United Fruit Co. (3 Cir. 1917), 243 F. 1, 20; Delta Theaters, Inc. v. Paramount Pictures, Inc., et al., 158 F.Supp. 644 (E.D.La.1958).

■ It cannot be determined from the face of appellant's complaint when appellee's monopoly power ceased; or the impact duration thereof which appellant alleges caused it damage. The impact of such power could "cause plaintiff to lose some customers altogether and suffer substantially lower sales to other customers"; retard its "normal increase in volume of sales"; cause it to "operate at a substantially lower level of profit"; injure its "prestige and reputation in the community and in the industry"; and, prevent it "from continuing in or initiating certain new ventures" to its damage; all during the time Reynolds retained monopoly power over Arrow. Such matters facially appearing in this record could be within the realm of damages recoverable and within the contemplation of Section 4 of the Clayton Act, and in part as having accrued "within four years after" any "cause of action" therefor arose, measured from the time the complaint was filed in the case at bar, as fixed by Section 5 of the Clayton Act.

Irrespective of the date of "acquirement" of Arrow by Reynolds, or the first "price-fixing" date as considered by the District Court, we must rule that the instant complaint reveals facts as to abuse of "monopoly power" which under proper showing, injury and damage to appellant's business might possibly be established within the limitation period as provided in Section 5(b) of the Clayton Act. To hold otherwise, as the District Court ruled, is to say that some damage that might have been sustained by appellant was barred before it accrued; i. e. before appellant sustained injury to its business or property because of appellee's continuous violation of Section 2 of the Sherman Act. The question is simply one of factual proof.

 Damages claimed in a private antitrust suit must be different from those suffered by the general public—i. e. they must be special to the claimant. Radiant Burners, Inc. v. Peoples Gas Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1960). Cf. Maltz v. Sax, (C.A.7, 1943), 134 F.2d 2; and Banana Distributors, Inc. v. United Fruit Co., (D.C.S.D.N.Y. 1958), 162 F.Supp. 32, and cases there cited. It is existence of monopoly power and the exertion thereof on the business of a competitor, in a relevant market, that gives rise to such a claim. Lawlor v. National Screen Service Corp., 238 F.2d 59 (3 Cir. 1956). Such right of action may arise from day to day. Steiner v. 20th Century-Fox Film Corp., 232 F.2d 190 (9 Cir. 1956) and cases there cited. It is well settled that where a private cause of action under the antitrust law is based upon a continuous invasion of one's rights, his cause of action accrues from day to day as his rights are invaded to his damage. Momand v. Universal Film Exchanges, 43 F.Supp. 996, 1006 (D.C. Mass.1942) aff'd 172 F.2d 37 (1 Cir. 1948), cert. den. 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118 (1948); Crummer Co. v. du Pont, 223 F.2d 238 (5 Cir. 1955). The issue raised by the complaint in the case at bar is appellant's engagement in "price-fixing" by use of "monopoly power". The ability to fix or control prices

is an indicium of monopoly power. United States v. E. I. du Pont de Nemours Co., 351 U.S. 377, 389–391, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). Price-fixing is an abuse of monopoly power. United States v. Aluminum Co. of America, 148 F.2d 416, 427–428 (2 Cir. 1945).

Reversed and remanded for further proceedings.