# SOON HING *v.* CROWLEY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF CALIFORNIA.

Submitted December 16, 1884.—Decided March 16, 1885.

The decision in *Barbier* v. *Connelly, ante,* 27—that a municipal ordinance prohibiting from washing and ironing in public laundries and wash-houses within defined territorial limits, from ten o'clock at night to six in the morning, is a police regulation within the competency of a municipality possessed of ordinary powers—affirmed.

It is no objection to a municipal ordinance prohibiting one kind of business within certain hours, that it permits other and different kinds of business to be done within those hours.

Municipal restrictions imposed upon one class of persons engaged in a particular business, which are not imposed upon others engaged in the same business and under like conditions, impair the equal right which all can claim in the enforcement of the laws.

When the general security and welfare require that a particular kind of work should be done at certain times or hours, and an ordinance is made to that effect, a person engaged in performing that sort of work has no inherent right to pursue his occupation during the prohibited time.

This court cannot inquire into the motives of legislators in enacting laws, except as they may be disclosed on the face of the acts, or be inferrible from their operation, considered with reference to the condition of the country and existing legislation.

The petitioner in the court below, the plaintiff in error here, was arrested by the defendant, who is chief of police of the city and county of San Francisco, for an alleged violation of an ordinance of the Board of Supervisors of that municipality, approved on the 18th of June, 1883; and while in custody of the officer applied to the Circuit Court of the United States for a writ of *habeas corpus*, in order to obtain his discharge. The Circuit Court refused to issue the writ; the judges of the court being divided in opinion, and that of the presiding judge controlling.

The ordinance was adopted to regulate the establishment and maintenance of public laundries and wash-houses within certain limits of the city and county of San Francisco. It recited that the indiscriminate establishment of such laundries and wash-houses, where clothes and other articles were cleansed for hire, endangered the public health and public safety, prejudiced the well-being and comfort of the community, and depreciated the value of property in their neighborhood. It then ordained, pursuant to the authority vested in the board, that after its passage it should be unlawful for any person to establish, maintain, or carry on the business of a public laundry or a public wash-house within certain designated limits of the city and county, without having first obtained a certificate of the health officer of the municipality that the premises were properly and sufficiently drained, and that all proper arrangements were made to carry on the business without injury to the sanitary condition of the neighborhood; and also a certificate of the Board of Fire Wardens of the municipality that the stoves, washing and drying apparatus, and the appliances for heating smoothing-irons were in good condition, and that their use was not dangerous to surrounding property from fire, and that all proper precautions were taken to comply with the provisions of the ordinance defining the fire limits of the city and county, and making regulations concerning the erection and

use of buildings therein. The ordinance requires the health officer and the Board of Wardens, upon the application of any one desirous to open or conduct the business of a public laundry, to inspect the premises in which it is proposed to carry on the business, in order to ascertain whether they are provided with proper drainage and sanitary appliances, and whether the provisions of the fire ordinance have been complied with ; and if found satisfactory in all respects, to issue to the applicant the required certificates, without charge for the services rendered.

Its fourth section declares that no person owning or employed in a public laundry or a public wash-house within the prescribed limits shall wash or iron clothes between the hours of ten in the evening and six in the morning, or upon any portion of Sunday ; and its fifth section declares that no person engaged in the laundry business within those limits shall permit anyone suffering from an infectious or contagious disease to lodge, sleep, or remain upon the premises. The violation of any of these provisions is declared to be a misdemeanor, and penalties are prescribed according to the nature of the offence. The establishing, maintaining or carrying on the business without obtaining the certificate is punishable by a fine of not more that $1,000, or by imprisonment of not more than six months, or by both. Carrying on the business outside of the hours prescribed, or permitting persons with contagious diseases on the premises, is punishable by a fine of not less than $5 or more than $50, or by imprisonment of not more than one month, or by both such fine and imprisonment.

The petitioner was arrested by the chief of police upon a warrant of a police judge of the municipality, issued upon a complaint under oath, that the petitioner had washed and ironed clothes in a public laundry within the prescribed limits between the hours of ten o'clock in the evening of the 25th of February, 1884, and six o'clock in the morning of the following day, thereby violating the provisions of section four of the ordinance.

The petition for the writ of *habeas corpus* presented to the judges of the Circuit Court set forth the arrest and detention

of the petitioner by the chief of police, the ordinance under which the arrest was made, the complaint before the police judge, and the issue of the warrant under which he was taken into custody. It then proceeded to state that the petitioner had for several years been engaged in working for hire in a public laundry in the city and county of San Francisco, and had in all respects complied with the laws of the United States and of California, and the ordinances of the city and county, except in washing at the hours mentioned; that the business of carrying on a laundry was a lawful one in which a large number of the subjects of the Emperor of China had been and were engaged in the said city and county within the limits prescribed by the ordinance; that there had been for several years great antipathy and hatred on the part of the residents of that city and county against the subjects of China residing and doing business there; that such antipathy and hatred had manifested themselves in various ways and under various forms for the purpose of compelling the subjects of China to quit and abandon their business and residence in the city and county and State; that owing to that feeling, and not otherwise, and not for any sanitary, police, or other legitimate purpose, but in order to force those subjects engaged in carrying on the business of a laundry in the city and county of San Francisco to abandon the exercise of their lawful vocation, and their only means of livelihood, the supervisors passed the ordinance in question; that the petitioner had been and was earning his living exclusively by working at washing and ironing for hire, and in order to gain a livelihood was obliged to work late in the night, and had no other lawful vocation; that on the first of January, 1884, his employer paid the license collector of the city and county six dollars, the amount required by the ordinance to obtain a license to carry on the business of a laundry, and obtained from him a license to carry on the business at a designated place within the prescribed limits. The petition also averred that section four of the ordinance was in contravention of the provisions of the Burlingame Treaty, and of the Fourteenth Amendment to the Constitution of the United States, in that it deprived them of the equal protection of the laws.

On the hearing of the application for the writ certain questions arose, upon which the judges of the Circuit Court were divided in opinion. They were as follows:

1. Whether section four of the ordinance mentioned is void on the ground that it is not within the police power of the Board of Supervisors of the city and county of San Francisco.

2. Whether said section is void on the ground that it discriminates between those engaged in the laundry business and those engaged in other classes of business.

3. Whether said section is void on the ground that it discriminates between the different classes of persons engaged in the laundry business.

4. Whether said section is void on the ground that it deprives a man of the right to labor at all times.

5. Whether said section is void on the ground that it is unreasonable in its requirements, in restraint of trade, or upon any other ground apparent upon the face of the ordinance, or appearing in the petition.

The opinion of the presiding judge being that the said section was valid and constitutional, the application for the writ was denied; and the judgment entered upon the denial was brought to this court for review.

*Mr. David McClure* and *Mr. Thomas D. Riordan* for plaintiff in error.

No appearance for defendant in error.

Mr. Justice Field, after making the foregoing statement of facts, delivered the opinion of the court.

The ordinance of the Board of Supervisors of the city and county of San Francisco, the legislative authority of that municipality, approved on the 25th of June, 1883, is similar in its main features to the ordinance under consideration at this term in *Barbier* v. *Connolly, ante,* page 27. It differs in the designation of the limits of the district of the city and county within which its provisions are to be enforced, but not otherwise in any essential particular. The fourth section is identical in both. The

prohibition against labor on Sunday in this section is not involved here, as it was not in that case; and the provision for the cessation of labor in the laundries within certain prescribed limits of the city and county during certain hours of the night is purely a police regulation, which is, as we there said, within the competency of any municipality possessed of the ordinary powers belonging to such bodies. Besides, the Constitution of California declares that "any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." Art. XI., § 11. And it is of the utmost consequence in a city subject, as San Francisco is, the greater part of the year, to high winds, and composed principally within the limits designated of wooden buildings, that regulations of a strict character should be adopted to prevent the possibility of fires. That occupations in which continuous fires are necessary should cease at certain hours of the night would seem to be, under such circumstances, a reasonable regulation as a measure of precaution. At any rate, of its necessity for the purpose designated the municipal authorities are the appropriate judges. Their regulations in this matter are not subject to any interference by the federal tribunals unless they are made the occasion for invading the substantial rights of persons, and no such invasion is caused by the regulation in question. As we said in *Barbier* v. *Connolly*, "the same municipal authority which directs the cessation of labor must necessarily prescribe the limits within which it shall be enforced, as it does the limits in a city within which wooden buildings cannot be constructed." No invidious discrimination is made against any one by the measures adopted. All persons engaged in the same business within the prescribed limits are treated alike and subject to similar restrictions.

There is no force in the objection that an unwarrantable discrimination is made against persons engaged in the laundry business, because persons in other kinds of business are not required to cease from their labors during the same hours at night. There may be no risks attending the business of others, certainly not as great as where fires are constantly required to carry them on. The specific regulations for one kind of busi-

ness, which may be necessary for the protection of the public, can never be the just ground of complaint because like restrictions are not imposed upon other business of a different kind. The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws.

But counsel in the court below not only objected to the fourth section of the ordinance as discriminating between those engaged in the laundry business, and those engaged in other business, but also as discriminating between different classes engaged in the laundry business itself. This latter ground of objection becomes intelligible only by reference to his brief, in which we are informed that the laundry business, besides the washing and ironing of clothes, involves the fluting, polishing, blueing, and wringing of them; and that these are all different branches, requiring separate and skilled workmen, who are not prohibited from working during the hours of night. This fluting, polishing, blueing, and wringing of clothes, it seems to us, are incidents of the general business, and are embraced within its prohibition. But if not incidents, and they are outside of the prohibition, it is because there is not the danger from them that would arise from the continuous fires required in washing; and it is not discriminating legislation in any invidious sense that branches of the same business from which danger is apprehended are prohibited during certain hours of the night, whilst other branches involving no such danger are permitted.

The objection that the fourth section is void on the ground that it deprives a man of the right to work at all times is equally without force. However broad the right of every one to follow such calling and employ his time as he may judge most conducive to his interests, it must be exercised subject to such general rules as are adopted by society for the common welfare. All sorts of restrictions are imposed upon the actions of men notwithstanding the liberty which is guaranteed to each. It is liberty regulated by just and impartial laws. Bar-

ties, for example, are free to make any contracts they choose for a lawful purpose, but society says what contracts shall be in writing and what may be verbally made, and on what days they may be executed, and how long they may be enforced if their terms are not complied with.  So, too, with the hours of labor.  On few subjects has there been more regulation.  How many hours shall constitute a day's work in the absence of contract, at what time shops in our cities shall close at night, are constant subjects of legislation.  Laws setting aside Sunday as a day of rest are upheld, not from any right of the government to legislate for the promotion of religious observances, but from its right to protect all persons from the physical and moral debasement which comes from uninterrupted labor. Such laws have always been deemed beneficent and merciful laws, especially to the poor and dependent, to the laborers in 'our factories and workshops and in the heated rooms of our cities; and their validity has been sustained by the highest courts of the States.

The principal objection, however, of the petitioner to the ordinance in question is founded upon the supposed hostile motives of the supervisors in passing it.  The petition alleges that it was adopted owing to a feeling of antipathy and hatred prevailing in the city and county of San Francisco against the subjects of the Emperor of China resident therein, and for the purpose of compelling those engaged in the laundry business to abandon their lawful vocation, and residence there, and not for any sanitary, police, or other legitimate purpose.  There is nothing, however, in the language of the ordinance, or in the record of its enactment, which in any respect tends to sustain this allegation.  And the rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferrible from their operation, considered with reference to the condition of the country and existing legislation.  The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments.  Their

motives, considered as the moral inducements for their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile. And in the present case, even if the motives of the supervisors were as alleged, the ordinance would not be thereby changed from a legitimate police regulation, unless in its enforcement it is made to operate only against the class mentioned; and of this there is no pretence.

It follows that the several questions certified must be answered in the negative and the judgment be affirmed;

*And it is so ordered.*