[No. B085744. Second Dist., Div. Three. Mar. 7, 1995.]

BOARD OF SUPERVISORS OF LOS ANGELES COUNTY et al.,
Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MUNICIPAL COURT JUDGES' ASSOCIATION OF LOS ANGELES
COUNTY et al., Real Parties in Interest.

**COUNSEL**

De Witt W. Clinton, County Counsel, and Gordon W. Trask, Principal Deputy County Counsel, for Petitioners.

No appearance for Respondent.

Buchalter, Nemer, Fields & Younger, Marcus M. Kaufman, Debra Solle Healy and Mark M. Scott for Real Parties in Interest.

OPINION

KITCHING, J.—

INTRODUCTION

Plaintiff Municipal Court Judges' Association of Los Angeles County objects to the October 26, 1993, decision by the Los Angeles County Board of Supervisors to consolidate court-related services in the county sheriff instead of in the marshal's office. The plaintiff sought discovery concerning whether the supervisors ignored, or even considered, the vote of the Los Angeles Municipal and Superior Court judges; in effect this effort was an attempt to inquire into the Supervisors' mental processes in reaching their decision to select the sheriff's office instead of the marshal's office. This petition raises the question whether the trial court properly ruled to permit the plaintiff to conduct discovery of extrinsic evidence concerning whether members of the board of supervisors took the judges' vote into advisement before reaching their decision. Legal precedent prohibits such an inquiry into the supervisors' mental processes. We conclude that the trial court erroneously permitted discovery and grant the board of supervisors' petition for writ of mandate prohibiting such discovery.

FACTS

In 1993, the Legislature enacted article 1.8, captioned "Sheriff-Marshal Consolidation," comprising Government Code sections 26639, 26639.1, 26639.2, and 26639.3. Government Code section 26639 authorized the board to hold public hearings regarding consolidation of court-related services provided by the marshal and sheriff, and to determine the most cost-effective and efficient manner of consolidation within 30 days. Section 26639 also authorized an election to be conducted among all Los Angeles County Superior and Municipal Court judges to provide an advisory recommendation to the board as to the preferred agency under which to consolidate court-related services and service of civil and criminal process. Section 22639 required that the judges' vote be forwarded to the board before the close of the public hearing, and concluded: "the board of supervisors shall take into advisement the recommendation of the judges provided by the election report."

On October 22, 1993, the Los Angeles County Superior and Municipal Court judges submitted the voting result to the board. Two hundred ninety-eight judges voted for the marshal; sixty-three judges voted for the sheriff. On October 26, 1993, the board selected the sheriff as the agency to provide bailiff services to the courts.

On December 27, 1993, in Los Angeles County Superior Court, the Municipal Court Judges' Association of Los Angeles County (MCJA) and three districts of the Los Angeles County Municipal Court (Long Beach Judicial District, Garry J. Ferrari, judge presiding; Rio Hondo Judicial District, Francis A. Gately, judge presiding; and Pomona Judicial District, Jack P. Hunt, judge presiding) sued the Los Angeles County Board of Supervisors (the Board), Los Angeles County Sheriff Sherman Block, Los Angeles County Municipal Courts Marshal Robert F. Mann, Los Angeles County Chief Administrative Officer Sally Reed, and the Association for Los Angeles Deputy Sheriffs (the Association).

The first cause of action for declaratory relief sought a declaration that Government Code sections 26639, 26639.1, 26639.2 and 26639.3[1] are unconstitutional and invalid. The second cause of action sought an injunction restraining defendants from effectuating the Board's October 26, 1993, resolution merging the marshal's office with the Los Angeles County Sheriff. The third cause of action sought a peremptory writ of mandate or prohibition commanding defendants to cease implementation of the resolution.

On December 29, 1993, the trial court denied MCJA's application for a temporary restraining order seeking to prevent the sheriff from assuming duties performed by the marshal.

According to the Board's petition, on May 17, 1994, MCJA deposed Sheriff Sherman Block. During the deposition, MCJA's counsel questioned Sheriff Block about communications he had with members of the Board before October 26, 1993, regarding the agency they would select to provide court services. Counsel also questioned Sheriff Block about communications to the Governor before the Governor signed the assembly bill which became section 26639 et seq., and the Governor's veto of a competing bill which would have given the county's judges the power to decide which department would provide court-related services. Sheriff Block's counsel objected on the ground that the separation of powers doctrine barred inquiry into the legislative officers' thought processes, and Sheriff Block refused to answer the questions.

Defendants filed a motion *in limine* and for order limiting discovery. Before the court ruled, the parties stipulated that the action raised the issue whether the Board took into advisement the judges' recommendation as required by section 26639 et seq. before making its October 26, 1993,

---

[1]All further references to the code are to the Government Code unless otherwise specified.

resolution. Plaintiffs sought discovery of extrinsic evidence on this question. The stipulation defined "extrinsic evidence" as evidence other than the Board's October 26, 1993, resolution, matters appearing in the record of proceedings before the Board, or matters that may be judicially noticed. Defendants asserted that no discovery of extrinsic evidence, including deposition of Board members, could take place because such evidence is inadmissible and discovery would violate the separation of powers. Plaintiffs asserted that extrinsic evidence showing that the Board decided, before the public hearing, to select the sheriff rather than the marshal, is admissible and that plaintiffs could conduct discovery that might lead to development of such extrinsic evidence.

The parties asked the court to resolve two questions. First, is extrinsic evidence admissible on whether the Board complied with the section 26639, subdivision (b) requirement that before deciding, the Board "take into advisement" the judges' recommendation? Second, could plaintiffs seek discovery of extrinsic evidence on this question?

On August 1, 1994, the trial court ruled, first, that the section 26639, subdivision (b) requirement that the Board "take into advisement" the judges' vote before selecting the sheriff or marshal to provide services to the superior and municipal courts was a condition precedent to the Board's vote. Second, the court ruled plaintiffs should be permitted discovery as to whether the Board met that condition. Third, plaintiffs could complete the deposition of Sheriff Block, depose representatives of the association, and search for documents.[2] Fourth, plaintiffs could not depose Board members until further court order. Fifth, the court stayed discovery authorized by its order until August 4, 1994, except that plaintiffs could serve discovery requests, including a deposition subpoena on the Association, with due dates set after August 4, 1994.

On August 4, 1994, the Board filed a petition for writ of mandate and/or prohibition and a request for stay. This court stayed superior court proceedings pending determination of the petition. On September 7, 1994, this court

[2]The May 17, 1994, deposition of Sheriff Block and the ruling on the motion in limine permitting his deposition distinguishes this appeal from that in *City and County of San Francisco* v. *Superior Court* (1975) 13 Cal.3d 933 [120 Cal.Rptr. 730, 534 P.2d 426], refusing to bar enforcement of an order requiring county supervisors to attend depositions in a pending taxpayer action. *City and County of San Francisco* denied the writ as premature: no court had yet ordered individual legislators to answer improper questions and the order preserved the legislators' right to refuse to answer improperly intrusive questions. (*Id.* at p. 936.) In the case at bench, although no individual Board members have yet been deposed and the trial court's ruling prohibits such depositions pending further court order, the deposition of Sheriff Block sought testimony concerning his communications with Board members before their October 26, 1993, vote. Such questioning clearly goes to the prohibited subject of the supervisors' mental processes.

issued an alternative writ of mandate requiring the Los Angeles Superior Court either to vacate its August 1, 1994, order and make a new and different order, or to show cause why a peremptory writ of mandate ordering the superior court to do so should not issue.

## ISSUES

The Board, as petitioner, claims that the superior court abused its discretion, acted in excess of its jurisdiction, and violated the separation of powers by authorizing a judicially enforced inquiry into Board members' thought processes.

## DISCUSSION

Section 26639 states: "(a) Notwithstanding any other provision of law, the Board of Supervisors of Los Angeles County may, no later than October 1, 1993, commence public hearings regarding the consolidation of court-related services provided by the marshal and sheriff within the county. Within 30 days of the commencement of public hearings as authorized by this section, the board shall make a final determination as to the most cost-effective and most efficient manner of consolidation. [¶] (b) Concurrently, an election may be conducted among all of the judges of the superior and municipal courts of that county to provide an advisory recommendation to the board of supervisors as to the preferred agency, either the marshal or the sheriff, under which court-related services and the service of civil and criminal process may be consolidated. The outcome shall be determined by a simple majority of votes cast. The vote of the judges shall then be forwarded to the board of supervisors prior to the close of the public hearing, and the board of supervisors shall take into advisement the recommendation of the judges provided by the election report."

Sections 26639.1, 26639.2, and 26639.3 concern timing of the consolidation, courtroom assignment of bailiffs, and the effects of the consolidation on personnel.

In arguing the motion *in limine* which is the subject of this petition, the Board contended that as a matter of law and fact, the Board did take the judges' recommendation into advisement, and that no extrinsic evidence could be introduced or discovery taken on that point. Plaintiffs contended that as a matter of fact, the Board did not take that recommendation into advisement, that extrinsic evidence is admissible to show that the Board decided before the public hearing to select the sheriff rather than the marshal, and that plaintiffs could conduct discovery that might lead to the development of such extrinsic evidence.

■ There are some controversies, however, the courts will not review. This is one of them. The judiciary confines evaluation of a statute to the terms of the legislation itself and will eschew inquiry into what motivated or influenced those who voted on the legislation. (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 913 [120 Cal.Rptr. 707, 534 P.2d 403].)

This principle derives from the "separation of powers" doctrine, expressly stated in California Constitution, article III, section 3, and implied in the federal Constitution by its distribution of governmental powers into legislative, executive, and judicial departments. "If it be important thus to separate the several departments of government and restrict them to the exercise of their appointed powers, it follows, as a logical corollary, equally important, that each department should be kept completely independent of the others—independent . . . in the sense that the acts of each shall never be controlled by, or subjected, directly or indirectly, to, the coercive influence of either of the other departments." (*O'Donoghue* v. *United States* (1933) 289 U.S. 516, 530 [77 L.Ed. 1356, 1360, 53 S.Ct. 740].)

Judicial reluctance to explore the thought process of legislators emerged very early in American jurisprudence. The California Supreme Court in *County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721, 727 [119 Cal.Rptr. 631, 532 P.2d 495], called *Fletcher* v. *Peck* (1810) 10 U.S. (6 Cranch) 87 [3 L.Ed. 162] "the classic statement of the policies behind the rule." Even when a Legislature stood accused of corruption in its lawmaking, Chief Justice Marshall wrote: "It may well be doubted how far the validity of a law depends upon the motives of its framers, and how far the particular inducements, operating on members of the supreme sovereign power of a state, to the formation of a contract by that power, are examinable in a court of justice. If the principle be conceded, that an act of the supreme sovereign power might be declared null by [a] court, in consequence of the means which procured it, still would there be much difficulty in saying to what extent those means must be applied to produce this effect. Must it be direct corruption, or would interest or undue influence of any kind be sufficient? Must the vitiating cause operate on a majority, or on what number of the members? Would the act be null, whatever might be the wish of the nation, or would its obligation or nullity depend upon the public sentiment? [¶] If the majority of the legislature be corrupted, it may well be doubted, whether it be within the province of the judiciary to control their conduct, and, if less than a majority act from impure motives, the principle by which judicial interference would be regulated, is not clearly discerned." (*Fletcher* v. *Peck*, *supra*, 10 U.S. at p. 130 [3 L.Ed. at p. 176].)

*County of Los Angeles* also quotes *Soon Hing* v. *Crowley* (1885) 113 U.S. 703 [28 L.Ed. 1145, 5 S.Ct. 730] on the rule restricting judicial review of legislators' motives. "[T]he rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferable from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be, to accomplish that which follows as the natural and reasonable effect of their enactments. Their motives, considered as the moral inducements for their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile." (*Id.* at pp. 710-711 [28 L.Ed. at p. 1147].)

*City and County of San Francisco* v. *Cooper, supra,* emphasizes the futility and danger of the courts attempting to test the validity of legislation by exploring what influenced or motivated particular legislators.[3] An individual legislator may respond to diverse influences and act from various motives, making it difficult to determine whether an improper influence or motive actually determined a legislator's vote. The collective nature of the legislative process compounds the difficulty of determining what influences and motives, improper or otherwise, are responsible for a statute. These considerations, and the separation of powers doctrine, caused the California Supreme Court to conclude that "in the absence of some overriding constitutional, statutory or charter proscription, the judiciary has no authority to invalidate duly enacted legislation." (*City and County of San Francisco* v. *Cooper, supra,* 13 Cal.3d 898, 914-915.) This principle applies to local Legislatures. (*Oxnard Harbor Dist.* v. *Local Agency Formation Com.* (1993) 16 Cal.App.4th 259, 271 [19 Cal.Rptr.2d 819].)

Plaintiffs in the case at bench contend under the authority of section 26639, subdivision (b) that a poll of the municipal and superior court judges of Los Angeles County was to provide "an advisory recommendation" to the

---

[3]Refusing to explore the motivation of city council members accused of voting to close public pools because they desired to avoid racial integration, *Palmer* v. *Thompson* (1971) 403 U.S. 217, 225 [29 L.Ed.2d 438, 444-445, 91 S.Ct. 1940], cited *Fletcher* v. *Peck, supra,* and commented: "It is difficult or impossible for any court to determine the 'sole' or 'dominant' motivation behind the choices of a group of legislators. Furthermore, there is an element of futility in a judicial attempt to invalidate a law because of the bad motives of its supporters. If the law is struck down for this reason, rather than because of its facial content or effect, it would presumably be valid as soon as the legislature or relevant governing body repassed it for different reasons."

Board about whether to consolidate court-related services and service of civil and criminal process under the sheriff or the marshal. The statute ordered forwarding of the judges' vote to the Board before the close of the public hearing, and ordered the Board to "take into advisement" the judges' recommendation.

The quoted language shows that the Board retained the power to make the choice, and that the judges' vote did not bind the Board. Not only was the vote a "recommendation," it was "advisory." To comply with section 26639, all the Board had to do was to receive it before the close of public hearing, and take the recommendation "into advisement." The dictionary definition of "advisory" is "having or exercising power to advise," and "containing or giving advice." "Advisement" is defined as "careful consideration: deliberation." (Webster's Ninth New Collegiate Dict. (1985) p. 59.)

In *County of Los Angeles* v. *Superior Court, supra,* 13 Cal.3d 721, an underlying taxpayer suit sought to enjoin implementation of a county ordinance establishing salaries for county employees. The suit alleged that the county supervisors entered into an agreement with the employees under duress, coercion, and threat of illegal strike activities, and enacted the challenged salary ordinance as a direct result of a threatened illegal strike. The suit sought a declaration of the invalidity of the ordinance and an injunction restraining the county from implementing it. The plaintiff deposed five supervisors who voted on the ordinance, the director and deputy director of the county personnel department, and the supervisors' executive officer-clerk, questioning them about discussions between supervisors and the county's labor negotiators during executive session in an attempt to probe the reasons behind the supervisors' later adoption of the salary ordinance and whether the strike threat substantially influenced their enactment of wage increases. (*Id.* at pp. 723-724.)

When the deponents refused to answer questions, plaintiff moved for an order compelling them to answer those questions. The trial court granted the motion in part, ordering the deponents to reveal the contents of such discussions insofar as they involved strikes or threats of strikes. (*County of Los Angeles* v. *Superior Court, supra,* 13 Cal.3d at pp. 724-725.)

In reversing the trial court's discovery order, *County of Los Angeles* rejected the theory that the propriety of the order rested solely on the Evidence Code section 1040 conditional privilege for "official information." The Supreme Court instead relied on the principle that "precludes any judicially authorized inquiry into the subjective motives or mental processes

of legislators." (*County of Los Angeles* v. *Superior Court, supra*, 13 Cal.3d at pp. 725-726.) This principle is linked both to the separation of powers doctrine and to the rule that the validity of legislation depends on the objective effect of its terms rather than the subjective motives of the people drafting it. (*Id.* at p. 727.)

The vague nature of legislators' thought processes and motives corresponds to the lack of an objective standard by which a party might establish, or a court might review, whether Board members actually considered the judges' recommendation. The statute sets forth no criteria concerning the length of time, degree of earnestness, or amount of effort and energy necessary for Board members to comply with the statutory requirement that they take the judges' recommendation into advisement. Neither does this court have any means to judge the competing considerations considered by the Board, why those considerations prevailed over the judges' recommendation, or whether that recommendation should have prevailed.

For a court to engage in review on these terms would be to enter a thicket of complexity from which a clear answer might never emerge. To revert to the image employed by the California Supreme Court, "The potential passages and pathways of legislative motivation are as complex as those of the labyrinth of King Minos of Crete." (*County of Los Angeles* v. *Superior Court, supra*, 13 Cal.3d at p. 732.) Simply put, to review the Board's determination would amount to establishing this court as a second Legislature, with veto power over enactments of elected officials. Aside from the lack of any standard for doing so, that review would violate the separation of powers.

■ We also affirm that respondents may not seek to circumvent the prohibition against discovery of Board members' thought processes by deposing others—such as Sheriff Block—about communications with Board members. Plaintiffs in *County of Los Angeles*, for example, assumed that an ordinance resulting from the threat of an illegal strike invalidated the legislation. *County of Los Angeles* questioned this theory, but stated: "even assuming that the ulterior purpose behind the enactment is relevant to the ordinance's validity, the taxpayer still may not prove such ulterior purpose by requiring legislators to testify about their reasoning process *or by questioning others about the factors which may have led to the legislators' votes*." (*County of Los Angeles* v. *Superior Court, supra*, 13 Cal.3d at p. 729, original italics omitted; new italics added.) Thus *County of Los Angeles* exempts Board members individually and Sheriff Block from discovery to determine their mental processes motivating their vote on consolidation.

The plaintiffs claim they do not seek to discover legislative thought processes, but only whether the Board predetermined, before the hearing

required by statute, to select the sheriff to provide court-related services. First, this contention is answered by the quotation from *County of Los Angeles* in the previous paragraph. To question others, such as Sheriff Block, about the facts which may have led to the legislators' votes, merely constitutes an alternate method of finding out how and when Board members arrived at their positions.

Second, the attempt to determine when a supervisor decided to vote a particular way is bound up in why that decision was reached; once again, the inquiry goes to the thought processes, which are prohibited by the rules this opinion has already set forth. It is also an attempt to recast questioning about legislators' motives and mental processes into inquiry about whether the Board satisfied the procedural requirement of section 26639. We reject this distinction, as did *Governing Board* v. *Superior Court* (1985) 167 Cal.App.3d 1158, 1161-1162 [213 Cal.Rptr. 771].

Third, questions seeking to learn whether Board members had arrived at their positions before the hearing are barred because they are irrelevant; such positions would not disqualify the supervisors from voting or invalidate their decision. Neither would the acquisition of information outside the hearing room concerning the proposed consolidation. (*City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768, 779-780, 782 [122 Cal.Rptr. 543, 537 P.2d 375].)

We therefore grant the petition for writ of mandamus and prohibit deposition of witnesses or discovery of documents which constitute "extrinsic evidence," i.e., evidence other than the Board's October 26, 1993, resolution, of matters appearing in the record of proceeding before the Board, or matters that may be judicially noticeable.

The alternative writ is discharged. The petition is granted.

Croskey, Acting P. J., and Aldrich, J., concurred.