[No. H014128. Sixth Dist. Dec. 6, 1995.]

CITY OF SANTA CRUZ et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent;
BOMBAY CORPORATION, Real Party in Interest.

## COUNSEL

Atchison, Anderson, Hurley & Barisone, John G. Barisone and Anthony P. Condotti for Petitioners.

No appearance for Respondent.

Baker & McKenzie, Timothy A. Tosta, Bruce H. Jackson and Timothy D. Cremin for Real Party in Interest.

## OPINION

**COTTLE, P. J.**—In this action challenging the City of Santa Cruz's (City's) adoption of a general plan, the trial court ordered City's planning director and commissioners to reveal in depositions "whether there was an agreement among the council and commission members to refuse to consider any zoning for the greenbelt properties other than agricultural, regardless of the facts or evidence presented."

We stayed the depositions on City's application for a writ of mandate/prohibition, to permit further consideration of the issues raised in the petition. As will appear, we agree with City that discovery into the subjective motives or mental processes of legislators is forbidden, and that this proscription may not be circumvented by deposing others about the factors that may have led to the legislators' votes. Accordingly, we have determined that the writ of prohibition should issue to prohibit the depositions of Celia Scott, Jeff Ringold, and Peter Katzlberger.

## FACTS

Real party in interest, the Bombay Corporation (Bombay), filed a petition for writ of mandate in the superior court, challenging City's approval of a general plan and the environmental impact report (EIR) prepared in support of it. In the petition, Bombay alleged that "City made an early decision as to the fundamental premise or approach for the General Plan, and screened out possible alternatives to that premise, without any disclosure in the EIR."

In order to obtain evidence that "City made an early decision" and "screened out possible alternatives," Bombay noticed the depositions of four individuals who were involved in the planning process. City objected to the taking of three of these depositions—those of former planning commissioners Celia Scott and Jeff Ringold and of former planning director Peter Katzlberger[1]—and it filed a motion for a protective order in the superior court.

In support of its motion, City argued that "the burden, expense and intrusiveness of the depositions clearly outweighs [*sic*] the likelihood that they will lead to the discovery of admissible evidence, because: (1) judicial review is limited in this action to an examination of the record before the City Council at the time it made its decision certifying the EIR and adopting

---

[1]City's motion did not seek to prohibit the taking of the deposition of former city council member Louis Rittenhouse, who has filed a declaration in support of Bombay in this litigation. City's trial court papers are captioned: "NOTICE OF MOTION AND MOTION OF CITY OF SANTA CRUZ FOR PROTECTIVE ORDER TO PROHIBIT THE TAKING OF DEPOSITIONS OF CELIA SCOTT, JEFF RINGOLD, AND PETER KATZLBERGER"; "MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO PROHIBIT THE TAKING OF DEPOSITIONS OF CELIA SCOTT, JEFF RINGOLD, AND PETER KATZLBERGER; DECLARATION OF ANTHONY P. CONDOTTI IN SUPPORT THEREOF"; and "[PROPOSED] ORDER GRANTING MOTION FOR PROTECTIVE ORDER RE DEPOSITIONS OF PETER KATZLBERGER, CELIA SCOTT AND JEFF RINGOLD." While the City's reply memorandum does not specifically list the three deponents by name, it "asks that the Court prohibit the depositions and grant *the requested* protective order," (italics added) which, as noted, concerned only the three named individuals.

Nothing in the trial court's ruling suggests it was considering an issue not put to it— namely, whether Rittenhouse's deposition should go forward. Rather, the court ruled that, with respect to the depositions as to which a protective order was sought, i.e., the depositions of Scott, Ringold and Katzlberger, it was "going to issue a protective order which allows the depositions to go forward, but prohibit[s] inquiry into the subjective mental processes of the individuals deposed."

In its writ petition to this court, City, for the first time, requested an immediate stay of the depositions not only of Scott, Ringold and Katzlberger, but also of Rittenhouse. On June 23, 1995, we issued an order staying all four depositions to permit further consideration of the issues raised in the petition for writ of mandate. The stay is lifted with respect to Rittenhouse, and we express no opinion on the propriety of taking his deposition, as the issue was not before the trial court and is not properly before this court.

the General Plan; and (2) to the extent that [Bombay] seeks, by noticing the aforementioned decisions, to inquire into the mental processes underlying those decisions, a long line of cases has held such an inquiry impermissible."

In opposition, Bombay argued that the administrative record did not reflect the actual basis for the general plan approval, that evidence outside the record could be admitted if offered to show that City failed to consider "all relevant factors" in reaching its decision, and that the depositions did not seek to invade the thought processes or subjective decisionmaking of City officials.

Former City council member Louis Rittenhouse filed a declaration in support of Bombay's opposition to City's motion for a protective order. In the declaration, Rittenhouse states "that in considering the E.I.R. in the General Plan, members of the City Council and the Planning Commission made an early, non-public decision as to the fundamental premise or approach for the General Plan, eliminating from public review and consideration environmental consequences of a range of general plan alternatives with different fundamental approaches to long range planning for the City. The result of that decision was to concentrate development in the central City area and to permanently keep select land from the perimeter of the City (commonly referred to as the 'Greenbelt Properties') as open space buffer by precluding or severely limiting their development."

At the hearing on the protective order, the court allowed extensive arguments by both sides. Following argument, the court announced its ruling, as follows: "All right. So I'm balancing everybody here. Here's what I'm going to do: I'm going to issue a protective order which allows the depositions to go forward, but prohibit inquiry into the subjective mental processes of the individuals deposed. Thus these depositions are allowed for the purpose of determining whether there was an agreement among the council and commission members to refuse to consider any zoning for the greenbelt properties other than agricultural, regardless of the facts or evidence presented. [Bombay] may inquire into any communications or agreements between or among the council or commission members relating to that."

City then filed a writ petition in this court and a request for an immediate stay.

### DISCUSSION

■ It is fundamental that (1) the power to make laws is vested in the legislative department (*Schaezlein* v. *Cabaniss* (1902) 135 Cal. 466 [67 P.

755]) and ■ the courts cannot interfere with the legislative process (*O'Donoghue* v. *United States* (1933) 289 U.S. 516, 530 [77 L.Ed. 1356, 1360, 53 S.Ct. 740] ["If it be important thus to separate the several departments of government and restrict them to the exercise of their appointed powers, it follows, as a logical corollary, equally important, that each department should be kept completely independent of the others—independent . . . in the sense that the acts of each shall never be controlled by, or subjected, directly or indirectly, to, the coercive influence of either of the other departments."]; see also *Santa Clara County* v. *Superior Court* (1949) 33 Cal.2d 552, 559 [203 P.2d 1]; *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 70 [187 P.2d 686]). Ancillary to this separation of powers deference is the proposition that a court may not inquire into the motives of the Legislature in making its laws.

Hence, in *Soon Hing* v. *Crowley* (1885) 113 U.S. 703 [28 L.Ed. 1145, 5 S.Ct. 730], the United States Supreme Court stated the rule "with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or [inferable] from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments. Their motives, considered as the moral inducements for their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile." (*Id.* at pp. 710-711 [28 L.Ed. at p. 1147].)

The California Supreme Court expounded on the doctrine in *County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721 [119 Cal.Rptr. 631, 532 P.2d 495]. In that action, a taxpayer challenged the validity of a county ordinance establishing salaries and wages for the majority of county employees, alleging that the board of supervisors enacted the ordinance under the duress and coercion of a threatened illegal strike. While the hearing on the preliminary injunction was pending, the taxpayer deposed various board members, the director and deputy director of the personnel department, and the board's executive officer. She questioned them about discussions that took place during the executive sessions preceding negotiations with the employees' representatives. When the deponents refused to answer, the taxpayer moved for an order compelling them to answer. The trial judge granted the motion in part, ordering the deponents to reveal the contents of such discussions insofar as they involved strikes or threats of strikes.

In reversing the trial court's discovery order and issuing a writ of prohibition, the Supreme Court noted that both parties "appear to assume that the propriety of the trial judge's discovery order rests solely upon the application of section 1040 of the Evidence Code, [fn. omitted] which establishes a conditional privilege for 'official information.'" (*County of Los Angeles* v. *Superior Court, supra*, 13 Cal.3d at p. 725.) The court observed, however, that the conflicting claims as to the proper application of Evidence Code section 1040 were unnecessary to resolve, as "a more fundamental, historically enshrined legal principle" applied which prohibited judicial inquiry into the subjective motives or mental processes of legislators. (13 Cal.3d at p. 725.) This fundamental principle was first discussed in a California opinion in 1855, just years after California achieved statehood, and it "has been reiterated in literally scores of California decisions." (*Id.* at p. 726.) The principle applies to local legislators as well as to members of state legislatures or Congress. (*Ibid.*) And it is, on one level, a corollary of the related principle that the validity of a legislative act does not depend on the subjective motivation of its drafters but on the objective effect of the legislative terms. (*Id.* at p. 727.)

Even where an ulterior purpose is relevant to the validity of the ordinance, the taxpayer must establish it by objective proof, the court stated, not by inquiry into motivation. (*County of Los Angeles* v. *Superior Court, supra*, 13 Cal.3d at p. 729, discussing *Stahm* v. *Klein* (1960) 179 Cal.App.2d 512 [4 Cal.Rptr. 137].)

The court concluded with the following quotation from Professor Bickel: "'It is simply unthinkable . . . that members of legislative majorities should from time to time be subject to cross-examination in various courts over the country regarding their state of mind when they voted. That is no more representative government than it would be judicial process for judges to be subject to cross-examination by legislative committees about their state of mind in deciding cases. It seems almost anticlimactic to add that legislatures whose members were subject to call for testimony in this fashion would be hard put to find the time to legislate.'" (*County of Los Angeles* v. *Superior Court, supra*, 13 Cal.3d at pp. 731-732, quoting Bickel, The Least Dangerous Branch (1962) p. 215.)

In the instant case, the applicability of the legislative privilege is not as clear-cut as in *County of Los Angeles* v. *Superior Court, supra*, 13 Cal.3d 721. First there is the question of whether the legislative privilege applies to

these deponents, who are not legislators.[2] Second there is the question of whether the information sought from the deponents concerns the subjective motives and thought processes of legislators at all. If it does not, the legislative privilege does not apply. (*State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 256-258 [115 Cal.Rptr. 497, 524 P.2d 1281].)

Turning to the first question, we note that the deponents in *County of Los Angeles* v. *Superior Court, supra,* 13 Cal.3d 721, included not only members of the board of supervisors, but also the director and deputy director of the county personnel department and the executive officer-clerk of the board of supervisors. While the former were legislators, the latter were not, yet the Supreme Court made no distinction in its discussion of the issue between the two classes of deponents. So long as the inquiry goes to the subjective motivations of legislators, it is prohibited, no matter to whom the inquiry is directed. As the court stated, "[E]ven assuming that the ulterior purpose behind the enactment *is* relevant to the ordinance's validity, the taxpayer still may not prove such ulterior purpose by requiring legislators to testify about their reasoning process or *by questioning others about the factors which may have led to the legislators' votes.*" (*Id.* at p. 729, italics in original and added.)

A case specifically holding that the legislative privilege may extend, in appropriate circumstances, to nonlegislators is *Board of Supervisors* v. *Superior Court* (1995) 32 Cal.App.4th 1616 [38 Cal.Rptr.2d 876]. There, the Los Angeles County Municipal Judges' Association brought a declaratory relief action against the board of supervisors for its decision to consolidate court-related services in the county sheriff rather than the marshal's office. The board was statutorily required to hold a public hearing and to " 'take into advisement' " the recommendation of the judges, which was to select the marshal's office. (*Id.* at p. 1622, quoting Gov. Code, § 26639.) In their complaint, the judges alleged that the board predetermined to select the sheriff's office before commencing the public hearings. The trial court did not permit the judges to depose the board members, but it did allow them to depose the sheriff and representatives of the association for "extrinsic evidence" concerning whether the board decided, before the public hearing, to select the sheriff rather than the marshal.

The Court of Appeal issued a writ prohibiting the deposition of witnesses or discovery of documents. After discussing the principle that there may be

---

[2]As noted earlier, at the time City approved the general plan, Peter Katzlberger was the planning director, and Celia Scott and Jeff Ringold were planning commissioners. (Scott is currently on the city council.)

no judicially authorized inquiry into the subjective motives or mental processes of legislators, the court turned to the question of whether this rule applied to nonlegislator, Sheriff Block. It stated: "We also affirm that respondents may not seek to circumvent the prohibition against discovery of Board members' thought processes by deposing others—such as Sheriff Block—about communications with Board members. Plaintiffs in *County of Los Angeles*, for example, assumed that an ordinance resulting from the threat of an illegal strike invalidated the legislation. *County of Los Angeles* questioned this theory, but stated: 'even assuming that the ulterior purpose behind the enactment is relevant to the ordinance's validity, the taxpayer still may not prove such ulterior purpose by requiring legislators to testify about their reasoning process *or by questioning others about the factors which may have led to the legislators' votes.*' (*County of Los Angeles* v. *Superior Court, supra*, 13 Cal.3d at p. 729, original italics omitted, new italics added.) Thus *County of Los Angeles* exempts Board members individually and Sheriff Block from discovery to determine their mental processes motivating their vote on consolidation.

"The plaintiffs claim they do not seek to discover legislative thought processes, but only whether the Board predetermined, before the hearing required by statute, to select the sheriff to provide court-related services. First, this contention is answered by the quotation from *County of Los Angeles* in the previous paragraph. To question others, such as Sheriff Block, about the facts which may have led to the legislators' votes, merely constitutes an alternate method of finding out how and when Board members arrived at their positions.

"Second, the attempt to determine when a supervisor decided to vote a particular way is bound up in why that decision was reached; once again, the inquiry goes to the thought processes, which are prohibited by the rules this opinion has already set forth. It is also an attempt to recast questioning about legislators' motives and mental processes into inquiry about whether the Board satisfied the procedural requirement of section 26639. We reject this distinction, as did *Governing Board* v. *Superior Court* (1985) 167 Cal.App.3d 1158, 1161-1162 [213 Cal.Rptr. 771].

"Third, questions seeking to learn whether Board members had arrived at their positions before the hearing are barred because they are irrelevant; such positions would not disqualify the supervisors from voting or invalidate their decision. Neither would the acquisition of information outside the hearing room concerning the proposed consolidation. [Citation.]" (*Board of Supervisors* v. *Superior Court, supra*, 32 Cal.App.4th at pp. 1626-1627.)

Based on *County of Los Angeles* v. *Superior Court, supra*, and *Board of Supervisors* v. *Superior Court, supra*, we believe there is no question that the legislative privilege can and does apply to nonlegislators so long as the questioning goes to legislators' thought processes.

■ This takes us to the second question: whether the information Bombay seeks to obtain from these deponents implicates the legislative privilege in the first instance.

Bombay argues it does not. It contends that the area of inquiry permitted by the trial court's order "relates to the general plan approval *process*, not the thoughts and motivations behind the legislator's decision on the matter. The depositions seek information on whether an 'off the record,' single planning premise drove the entire General Plan process and, thereby, *precluded* all other possible and reasonable alternatives to that premise." In its supplemental response, Bombay expounds on this argument further: "Bombay's inquiry *goes to the propriety of the procedure by which the decision on the General Plan was made*. Assuming that the allegations in the Rittenhouse Declaration are true, Bombay's inquiry would relate to whether certain events occurred (i.e., meeting and agreements) as opposed to the subjective thought processes of the persons participating in those events. Bombay's inquiry relates to a *claim of invalidity of legislation based on procedural unfairness or irregularity*; in contrast, the legislative privilege prevents inquiry into the validity of legislation based on improper motive or basis for the decision. The court's determination of *whether the General Plan procedure was properly conducted* does not involve any inquiry into the motive or intent of City officials."[3] (Italics added.)

Despite Bombay's insistence that it is only concerned with the "procedure" employed by the council in reaching its decision, it cites no examples of how the City failed to follow the prescribed procedures in adopting the general plan. Bombay does not, for example, allege that City failed to provide the public with opportunities to be involved in the general plan process (Gov. Code, §§ 65355-65356), or that it failed to refer the plan to other agencies for comment (Gov. Code, § 65352), or that the planning commission failed to make written recommendations on the plan to the city

---

[3]The trial court assumed that the depositions concerned "communications" between and among council members, not mere procedure. Its order provided that Bombay could inquire "for the purpose of determining whether there was an agreement among the council and commission members to refuse to consider any zoning for the greenbelt properties other than agricultural, regardless of the facts or evidence presented. [*Bombay*] *may inquire into any communications or agreements between or among the council or commission members relating to that*."

council (Gov. Code, § 65354), or that City failed to hold public hearings before adopting the general plan (Gov. Code, § 65351).

In reality, the "procedural" irregularity about which Bombay complains does not go to procedure at all; rather it relates to the substance of the legislators' decision, which was to reserve the greenbelt properties for agricultural purposes only, and to when the legislators arrived at their decision.

*City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768 [122 Cal.Rptr. 543, 537 P.2d 375], addressed a similar issue. In that case, applicants who had been denied a permit for a planned unit shopping center development sought a writ of mandate. The applicants argued that the bias of two particular council members had denied them a fair hearing. They sought to depose the two legislators as to the evidence they relied on in voting against the application, and they sought to obtain extrinsic evidence showing that the legislators had stated their opposition to the application prior to the public hearing on the application. Questions included: " 'when did you make up your mind how you were going to vote . . . ?' "; " 'did you discuss the matter of the PUD application . . . with any individual prior to April 2, 1974?' "; " '[d]id you promise any group in the City of Fairfield that you would vote against the PUD . . . ?' " (*Id.* at p. 774, fn. 5.)

After the trial court ordered the council members to answer, the city sought a writ of prohibition. In granting the writ, the Supreme Court explained that the applicants could not question the council members on the evidence they relied on or the reasoning they employed in voting against the application. The court also noted that the evidence the applicants sought concerning the council members' prehearing statements opposing the application would not have disqualified them from voting on the application, and, accordingly, such evidence was inadmissible because it was not relevant.

Similarly, in the instant case, Bombay is seeking to discover when and if the council members predetermined to give the greenbelt properties an agricultural designation in the general plan, notwithstanding any evidence they would later receive at the public hearings on the plan. However, as the Supreme Court has stated in *City of Fairfield* v. *Superior Court, supra*, "this inquiry is irrelevant; even if [Bombay] could prove that [the City council members] had [made up their minds] before the hearing, that fact would not disqualify them from voting on the [general plan]." (14 Cal.3d at p. 779.) Legislators, like other citizens, may hold views and ". . . it would be contrary to the basic principles of a free society to disqualify from service in

the popular assembly those who had made pre-election commitments of policy on issues involved in the performance of their sworn . . . duties." (*Wollen* v. *Fort Lee* (1958) 27 N.J. 408 [142 A.2d. 881, 888].)

Similarly, in *Board of Supervisors* v. *Superior Court, supra*, the nature of the attempted questioning of Sheriff Block was to ascertain whether the board of supervisors had predetermined to select the sheriff to provide court-related services, even before receiving the judges' recommendation. The court stated: "[T]he attempt to determine when a supervisor decided to vote a particular way is bound up in why that decision was reached; once again, the inquiry goes to the thought processes, which are prohibited by the rules this opinion has already set forth. It is also an attempt to recast questioning about legislators' motives and mental processes into inquiry about whether the Board satisfied the procedural requirement of section 26639. We reject this distinction . . . ." (32 Cal.App.4th at p. 1627.)

Likewise, in this case, we reject Bombay's argument that it is merely inquiring into the procedural irregularities in the general plan approval process. We are persuaded that what it is truly attempting to discover is when the council members decided to designate the greenbelt properties as agricultural and whether they maintained open minds at the time of the public hearings. Such inquiry is clearly forbidden by the aforementioned authorities.

## DISPOSITION

A peremptory writ of mandate/prohibition will issue directing the superior court to vacate its order allowing Bombay to depose Celia Scott, Jeff Ringold and Peter Katzlberger "for the purpose of determining whether there was an agreement among the council and commission members to refuse to consider any zoning for the greenbelt properties other than agricultural, regardless of the facts or evidence presented."

Bamattre-Manoukian, J., and Wunderlich, J., concurred.