Filed 5/12/23; Certified for Publication 6/8/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| COALITION FOR HISTORICAL INTEGRITY,<br><br>   Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SAN BUENAVENTURA,<br><br>   Defendant and Respondent. | 2d Civ. No. B319536<br>(Super. Ct. No. 56-2020-00543397-CU-PT-VTA)<br>(Ventura County) |

This case illustrates the obvious; attitudes and values change. The City of San Buenaventura (City) removed a statute of Father Junípero Serra because it is now offensive to significant members of the community.

This appeal stems from the denial of a writ of mandate to require the City to restore the statute. We do not judge the wisdom or the action of the City's legislative enactments. (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1099.) We affirm because the City acted within its legislative prerogative.

FACTS

*The Statue of Junípero Serra*

In 1936, a concrete statue of Serra was dedicated in front of the Ventura County courthouse, now San Buenaventura City Hall. At nine feet four inches the statue was larger than life and stood on a rise overlooking all of downtown. In February 1974, the City adopted a resolution declaring the statue to be a historic landmark, designated as Landmark No. 3.

*The Bronze Replica Statue Departure*

By 1983, the statue was showing its age. It was cracking and in danger of falling apart. The City replaced the concrete statue with one cast in bronze. A local woodcarver created the form that was used for the cast. The new bronze statue of Serra was dedicated in 1989. A plaque was placed at the base of the replica statue that stated, "Landmark No. 3."

*The City's Review of the Statue's Landmark Status*

In 2002, the City created a list of historic landmarks. The bronze statue was placed on the list designated as Landmark No. 3. Also in 2002, at the City's request, the Ventura County Recorder recorded the 1974 minute order designating the original Serra statue as a historic landmark.

In 2005, the environmental impact report for the City's General Plan included the bronze statue on a list of landmarks in an appendix to the report. The General Plan marks the location of the statue as a historical site.

In 2007, as part of the Downtown Specific Plan (Specific Plan), the City commissioned the Historic Resources Group (HRG) to conduct a survey. The purpose of the survey was to determine whether existing landmarks retain sufficient historic integrity to remain eligible for that designation. The survey

2

identified the bronze statue as one of the previously designated landmarks that remain eligible for that determination.  The Specific Plan lists the bronze statue as a historic resource.

*The Bronze Statue's Demise*

In the summer of 2020, the bronze statue was the subject of protests and vandalism.  The City's mayor met with a representative from the Barbareno/Ventureno Band of Mission Indians (Chumash) and the pastor of the Mission San Buenaventura.  The mayor, the Chumash representative, and the pastor signed a letter expressing the belief that the statue should be "moved to a more appropriate non-public location."

The City again hired the HRG to conduct a historic analysis of the original concrete statue and the bronze replica statue.  This time the HRG report concluded that the bronze statue did not meet the criteria for a historic landmark.  Among the reasons given was that an object must be at least 40 years old to be eligible for a local historic designation and the 1989 bronze statue did not meet those criteria.

Based on the HRG report, the City's Historic Preservation Committee voted that the bronze statue is not Landmark No. 3, and not eligible for historic landmark status.

Thereafter, the city council met and adopted three findings.  First, the bronze statue does not meet the criteria for a historic designation.  Second, the decision to relocate the bronze statue is exempt from the California Environmental Quality Act[1] (CEQA)

---

[1] All further references are to the Public Resources Code, section 21000, et seq. unless otherwise stated.

under the "common sense"[2] exemption because the removal of a non-historic statue will not have a significant effect on the environment.  Third, the bronze statue be relocated to the San Buenaventura Mission.

*Petition for Writ of Mandate and Ex Parte Application*

In July 2020, the Coalition for Historical Integrity (Coalition) petitioned the trial court for a writ of mandate and injunctive relief.  The petition stated four causes of action.  First, removal of the landmark designation was not supported by substantial evidence.  Second, removal of the statue violates the City's Specific Plan.  Third, removal of the statue violates CEQA.  Fourth, removal of the statue violates state and municipal law.

On the same day the petition for writ of mandate was filed, the Coalition filed an ex parte application for a temporary restraining order to halt removal of the statue.  The City filed opposing documents.

*Ruling*

The trial court denied the Coalition's petition for a writ of mandate and preliminary injunction, as well as their ex parte application for temporary restraining order to prevent removal of the statue.  Thereafter, the City removed the statue.

---

[2] CEQA Guidelines, California Code of regulations, title 14, section 15061(b)(3), states the common sense exemption as follows:  "The activity is covered by the common sense exemption that CEQA applies only to projects which have the potential for causing a significant effect on the environment.  Where it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment, the activity is not subject to CEQA."

DISCUSSION

I. *CEQA*

The Coalition contends that removal of the bronze statue requires review under CEQA.

The Coalition points out that the environment CEQA protects includes "objects of historic or aesthetic significance." (§ 21060.5.)  Section 21084.1 provides in part:  "Historical resources included in a local register of historical resources, as defined in subdivision (k) of Section 5020.1, . . . are presumed to be historically or culturally significant for purposes of this section, unless the preponderance of the evidence demonstrates that the resource is not historically or culturally significant."

The Coalition argues that the bronze statue qualifies as presumptively historical.  It points to section 5020.1, subdivision (k), defining a "local register of historical resources" as a "list of properties officially designated or recognized as historically significant by a local government pursuant to a local ordinance or resolution."  The Coalition argues that the bronze statue was so designated by the City in a 1974 resolution.

The City contends that only the original concrete statue was designated as a landmark.  It asserts that the bronze replacement was never so dedicated and is not entitled to presumptive historical status.

But even if the statue is presumptively historical, section 21084.1 expressly provides that the presumption may be rebutted by a preponderance of the evidence.  Based on the 2020 HRG report, the City found that the statue is not historically significant.  We must uphold the finding if it is supported by substantial evidence.  (*Friends of Willow Glen Trestle v. City of San Jose* (2016) 2 Cal.App.5th 457, 467-468.)

The Coalition argues that the 2020 HRG report does not constitute substantial evidence. The Coalition asserts that the HRG report is anonymous, that it does not provide participant testimony, and that there is no evidence the author of the report is qualified as an expert.

But municipal agencies can properly consider and base decisions on evidence that would not be admissible in a court of law. (*Floresta, Inc. v. The City Council of the City of San Leandro* (1961) 190 Cal.App.2d 599, 608-609.) Moreover, the Coalition itself relies on a 2007 report by HRG.

Here the 2020 HRG report discusses the history of the statue and the criteria for evaluating its historical significance. Among other matters, the report points out that the bronze replica statue does not meet the 40-year-old threshold required for local designation as a historical landmark. The report constitutes substantial evidence.

It is true that for most of the statue's history the City viewed the original concrete statue and its bronze replacement as one. Recently however, the City viewed the statues as two separate statues. The Coalition cites no authority that prevents the City from changing its view. It is beyond question that the original concrete statue and its bronze replacement, are in fact two different statues.

The Coalition argues that section 21084.1 requires the City to find that the statue is "no longer" culturally or historically significant. But there is no reason why the presumption cannot be rebutted by a finding that the statue was never culturally or historically significant. Whether one agrees or not with this finding, that is what the City found. Having found the bronze

6

statue now has no historical significance, it follows that the CEQA common sense exemption applies.

## II. *Specific Plan*

The Coalition contends that removal of the bronze statue violates the City's Specific Plan.

The City's Specific Plan lists the bronze statue as among the City's historic resources. The Coalition argues that the Specific Plan provides for the preservation of historical resources. It does in part. But section 5.20.020 of the Specific Plan also allows for the demolition of a historical resource. The Specific Plan provides that the demolition of a historical resource may require review by the Historic Preservation Committee, the committee that approved removal of the statue. Nothing in the Specific Plan prohibits the destruction or removal of a statue that is listed as a historical resource upon a finding that on reexamination it, in fact, never had historical value.

## III. *The City's Municipal Code*

The Coalition contends that the City failed to follow the procedure set forth in the municipal code for removing landmark status from the statue. (See San Buenaventura Mun. Code, §§ 24.455.510, 24.455.520.) But the City found that the bronze statue was never a landmark. That finding is supported by substantial evidence. The code provisions for removing landmark status do not apply.

## IV. *Bias and Prejudgment*

The Coalition contends that removal of the statue was a quasi-judicial act, and that City council members unlawfully acted with bias and prejudice.

The City contends the decision to remove the statue is quasi-legislative. Council members acting in a quasi-judicial

7

capacity must be unbiased and cannot prejudice the matter. (*Petrovich Development Co., LLC v. City of Sacramento* (2020) 48 Cal.App.5th 963, 973 (*Petrovich*).)  Council members acting in a quasi-legislative capacity are not so constrained.  (*City of Santa Cruz v. Superior Court* (1995) 40 Cal.App.4th 1146, 1156-1157.)

The only authority cited by the Coalition in support of its contention that the City acted in a quasi-judicial capacity is *Petrovich, supra,* 38 Cal.App.5th at page 972.  But *Petrovich* involves the denial of a conditional use permit.  A conditional use permit may only be granted under the criteria established by a zoning ordinance. (Gov. Code, § 65901, subd. (a).)  Thus, the grant or denial of the permit involves questions of fact as to whether the criteria have been met.  The grant or denial is quasi-judicial.

The City decided to remove the statue because it was offensive to some members of the community.  The City was not engaged in finding facts under criteria established by a statute or ordinance.  It was making policy.  The City's decision to remove the statue was quasi-legislative.  (See *Oceanside Marina Towers Assn. v. Oceanside Community Development Com.* (1986) 187 Cal.App.3d 735, 745 [decisions of public entities on the location of public improvements are legislative].)

## DISPOSITION

The judgment is affirmed.  Costs are awarded to the respondent.


GILBERT, P. J.

We concur:


YEGAN, J.


BALTODANO, J.

Ronda J. Mckaig, Judge

Superior Court County of Ventura

_____

Mansueto Law Office and Daniel Mansueto; Alti Law Firm and Michael J. Alti for Plaintiff and Appellant.

Rutan & Tucker and Peter J. Howell for Defendant and Respondent.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| COALITION FOR HISTORICAL INTEGRITY,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SAN BUENAVENTURA,<br><br>  Defendant and Respondent. | 2d Civ. No. B319536<br>(Super. Ct. No. 56-2020-00543397-CU-PT-VTA)<br>(Ventura County)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |

THE COURT:

　　The opinion in the above-entitled matter filed on May 12, 2023, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

　　There is no change in judgment.

_____

GILBERT, P. J.　　　　YEGAN, J.　　　　BALTODANO, J.