[No. H031317. Sixth Dist. Mar. 18, 2008.]

SUTTER'S PLACE INC., Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
CITY OF SAN JOSE, Real Party in Interest.

COUNSEL

McManis Faulkner & Morgan, James McManis, Sharon Kirsch and Marwa Elzankaly for Petitioner.

No appearance for Respondent.

Richard Doyle, City Attorney, Nora Frimann, Chief Trial Attorney, Joseph DiCiuccio and Colleen Winchester, Deputy City Attorneys, for Real Party in Interest.

OPINION

**PREMO, J.**—Petitioner Sutter's Place Inc. operates a card room known as Bay 101 under a permit issued by real party in interest City of San Jose (City). City passed an ordinance that prohibits (1) operation of card rooms between 2:00 a.m. and 6:00 a.m., and (2) backline betting.[1] Sutter's Place sued City to nullify the ordinance and for other relief. It underlay its legal theories with a theme that the reduced hours and gaming option would render its card room business uneconomical and an argument that City's motive for adopting the ordinance was to put it out of business. Sutter's Place sought extensive discovery from City. City identified numerous documents for which it resisted discovery on various grounds. The parties, a referee, and respondent superior court engaged in prolonged efforts to resolve the dispute. After an in camera review of certain documents, respondent issued a discovery order protecting specified documents from disclosure on the ground that discovery would violate the mental processes principle (precluding judicial inquiry into the motivation or mental processes of legislators in enacting legislation). Sutter's Place seeks a writ of mandate or prohibition to overturn the order and compel the discovery. It contends that the recent passage of Proposition 59 has abrogated the mental processes principle. We disagree. We therefore deny the writ petition.

## BACKGROUND

When City attempted to enforce the ordinance, Sutter's Place filed the instant action joining a petition for administrative mandate with a complaint for declaratory relief. The petition challenges City's administrative decision denying an application to extend time for implementation of the ordinance and for a hardship exemption from the ordinance. The complaint challenges

---

[1] Backline betting allows players to bet on the hands of other players and is popular with some players.

the ordinance on the ground that the enactment was arbitrary and capricious in violation of due process that will result in a taking of property without compensation. It also asserts an estoppel theory that essentially claims that City gave Sutter's Place incentives to locate the business within city limits and Sutter's Place would never have done so had it known that City would later change the business's method of operation.

The order in question was filed on January 18, 2007, and recognizes that City may claim the mental processes principle "as to documents that directly reflect the motives and thought process of the Mayor and/or the City Council . . . ." It then recites that City submitted 36 documents for in camera review. It ultimately grants the motion to compel as to some documents, denies the motion as to other documents, and orders City to resubmit specified documents for further in camera review. Sutter's Place challenges the aspect of the order that states the following: "The motion to compel is DENIED as to the documents identified in the City's *in camera* [*sic*] submission as Nos. 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 20, 26, 27, 28, 29, 30, 32, and 33."[2] It frames the challenge as follows: "[Sutter's Place] seeks writ review of Respondent Court's January 18, 2007, Order on the ground that Respondent Court's decision, that Prop. 59 did not abrogate the common law [mental processes principle], was an abuse of discretion."[3]

## THE MENTAL PROCESSES PRINCIPLE

■ "As early as 1855, Chief Justice Murray declared in an opinion for this court: 'I know of no authority this Court possesses to inquire into the motives of the Legislature in the passage of any law; on the contrary, it has been uniformly held, that they could not be inquired into.' [Citation.] This doctrine has been reiterated in literally scores of California decisions. [Citations.] [¶] As Justice Field wrote for the United States Supreme Court in *Soon Hing* v. *Crowley* (1885) 113 U.S. 703, 710–711 [28 L.Ed. 1145, 5 S.Ct. 730]: '[T]he rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferrible from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered

---

[2] Respondent court also denied the motion as to unspecified remaining documents that had not been submitted for in camera review which the City also claimed were protected by the mental processes principle. It then ordered City to file an amended privilege log that included those documents.

[3] Presumably referring to the aspect of the order allowing City to file an amended privilege log, Sutter's Place also challenges the order to the extent that it allowed City to "continue to claim" under the mental processes principle. This challenge appears to be unripe but is, in any event, indistinguishable from the challenge to the adverse aspect of the order.

as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments. Their motives, considered as the moral inducement for their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile.' [¶] Moreover, the authorities, both in California and more generally, make clear that the rule barring judicial probing of lawmakers' motivations applies to local legislators as well as to members of the state Legislature or of Congress." (*County of Los Angeles v. Superior Court* (1975) 13 Cal.3d 721, 726 [119 Cal.Rptr. 631, 532 P.2d 495].)

 "On one level, the doctrine which precludes judicial delving into the subjective mental processes of individual legislators is a corollary of the related legal principle which establishes that the validity of a legislative act does not depend on the subjective motivation of its draftsmen but rests instead on the objective effect of the legislative terms. Thus, on many occasions this court has declared: ' ". . . [A] judiciary must judge by results, not by the varied factors which may have determined legislators' votes . . . ." ' [Citations.] As the United States Supreme Court has emphasized: 'It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive. . . . "The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted." [Citation.]' [Citation.] Given this general rule that the validity of legislation does not turn on legislative motive, the mental processes of individual legislators become irrelevant to the judicial task; hence, we do not peer into these subjective realms." (*County of Los Angeles v. Superior Court, supra*, 13 Cal.3d at pp. 727–728, fn. omitted.)

"Chief Justice Marshall's opinion in *Fletcher v. Peck* (1810) 10 U.S. (6 Cranch) 87 [3 L.Ed. 162] represents the classic statement of the policies behind the rule. Justice Marshall explained: 'It may well be doubted, how far the validity of a law depends upon the motives of the framers, and how far the particular inducements, operating on members of the supreme sovereign power of a state . . . are examinable in a court of justice. If the principle be conceded, that an act of the supreme sovereign power might be declared null by a court, in consequence of the means which procured it, still would there be much difficulty in saying to what extent those means must be applied to produce this effect. Must it be direct corruption? or would interest or undue influence of any kind be sufficient? Must the vitiating cause operate on a

majority? or on what number of the members? Would the act be null, whatever might be the wish of the nation? or would its obligation as nullity depend upon the public sentiment? If the majority of the legislature be corrupted, it may well be doubted, whether it be within the province of the judiciary to control their conduct, and, if less than a majority act from impure motives, the principle by which judicial interference would be regulated, is not clearly discerned.' " (*County of Los Angeles v. Superior Court, supra,* 13 Cal.3d at pp. 727–728, fn. 6.)

■ "This principle derives from the 'separation of powers' doctrine, expressly stated in California Constitution, article III, section 3, and implied in the federal Constitution by its distribution of governmental powers into legislative, executive, and judicial departments. 'If it be important thus to separate the several departments of government and restrict them to the exercise of their appointed powers, it follows, as a logical corollary, equally important, that each department should be kept completely independent of the others—independent . . . in the sense that the acts of each shall never be controlled by, or subjected, directly or indirectly, to, the coercive influence of either of the other departments.' " (*Board of Supervisors v. Superior Court* (1995) 32 Cal.App.4th 1616, 1623 [38 Cal.Rptr.2d 876]; see also *City of Santa Cruz v. Superior Court* (1995) 40 Cal.App.4th 1146, 1151 [48 Cal.Rptr.2d 216] ["Ancillary to this separation of powers deference is the proposition that a court may not inquire into the motives of the Legislature in making its laws."]; *City of King City v. Community Bank of Central California* (2005) 131 Cal.App.4th 913, 943 [32 Cal.Rptr.3d 384] ["The basis for this rule is obvious. Courts would grossly overstep their constitutional bounds if they assumed a general power to invalidate facially unobjectionable legislation based upon what they found to be impermissible motives or other flaws in the mental processes of legislators."].)

The parties sometimes refer to the principle under discussion as a "privilege." But the principle is less a privilege than the "more fundamental, historically enshrined legal principle that precludes any judicially authorized inquiry into the subjective motives or mental processes of legislators." (*County of Los Angeles v. Superior Court, supra,* 13 Cal.3d at p. 726.) The Supreme Court has also referred to the principle as the "common law privilege protecting the 'mental processes' of legislators" to distinguish it from the analogous "common law privilege that attached to confidential intraagency

advisory opinions," which is now codified and sometimes referred to as the "deliberative process" or "executive" privilege. (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1339–1340, fn. 10 [283 Cal.Rptr. 893, 813 P.2d 240].)

■ In any event, "In this state, evidence that relates to the mental processes of individual legislators is 'irrelevant to the judicial task.' [Citation.] Consequently, such evidence is 'not the proper subject of discovery requests.'" (*Nadler v. Schwarzenegger* (2006) 137 Cal.App.4th 1327, 1336–1337 [41 Cal.Rptr.3d 92].) Thus, "even if we assume that the ordinance at issue could be invalidated if it resulted from [an illicit motive], the authorities make clear that [Sutter's Place] still is not entitled to directly question [City's] legislators as to their mental processes or their reasons for enacting the ordinance. In other words, even assuming that the ulterior purpose behind the enactment *is* relevant to the ordinance's validity, [Sutter's Place] still may not prove such ulterior purpose by requiring legislators to testify about their reasoning process or by questioning others about the factors which may have led to the legislators' votes. Even under such circumstances, the principle barring judicially authorized inquiry of legislators' motivation remains intact." (*County of Los Angeles v. Superior Court, supra*, 13 Cal.3d at p. 729.)

## PROPOSITION 59

"Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process." (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651 [230 Cal.Rptr. 362, 725 P.2d 470].)

■ The California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.), enacted by the Legislature in 1968, provides for this access via a scheme to inspect public records maintained by state and local agencies. (*Gilbert v. City of San Jose* (2003) 114 Cal.App.4th 606, 610 [7 Cal.Rptr.3d 692].) The CPRA replaced a hodgepodge of statutes and court decisions relating to disclosure of public records and was conceived broadly to require full agency disclosure unless information is statutorily exempted. (*Los Angeles Unified School Dist. v. Superior Court* (2007) 151 Cal.App.4th 759, 765 [60 Cal.Rptr.3d 445] (*Los Angeles Unified*).) One particular exemption applies to "Records, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to

privilege." (Gov. Code, § 6254, subd. (k).) "As is evident from the statutory language, this exemption 'is not an independent exemption. It merely incorporates other prohibitions established by law.' " (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1283 [48 Cal.Rptr.3d 183, 141 P.3d 288].) Given that the mental processes principle is rooted in the common law and constitutional separation-of-powers doctrine, Government Code section 6254, subdivision (k), necessarily exempts from disclosure public records to which the principle is applicable.

"With the passage of Proposition 59 effective November 3, 2004, the people's right of access to information in public settings now has state constitutional stature, grounding the presumption of openness in civil court proceedings with state constitutional roots." (*Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 597 [57 Cal.Rptr.3d 215] (*Savaglio*); see also *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 288 [64 Cal.Rptr.3d 661, 165 P.3d 462] (*Commission*) ["As the result of an initiative measure adopted by the voters in 2004, this principle now is enshrined in the state Constitution . . . ."]; *International Federation of Professional and Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 329 [64 Cal.Rptr.3d 693, 165 P.3d 488] (*International Federation*) [same]; *BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 750 [49 Cal.Rptr.3d 519] (*BRV*) [Prop. 59 "enshrined in our state Constitution the public's right to access records of public agencies"]; *Los Angeles Unified, supra*, 151 Cal.App.4th at p. 765 [same].)

Proposition 59 states as follows.

"(b)(1) The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny.

"(2) A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access. A statute, court rule, or other authority adopted after the effective date of this subdivision that limits the right of access shall be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

"(3) Nothing in this subdivision supersedes or modifies the right of privacy guaranteed by Section 1 or affects the construction of any statute, court rule, or other authority to the extent that it protects that right to privacy, including any statutory procedures governing discovery or disclosure of information concerning the official performance or professional qualifications of a peace officer.

"(4) Nothing in this subdivision supersedes or modifies any provision of this Constitution, including the guarantees that a person may not be deprived of life, liberty, or property without due process of law, or denied equal protection of the laws, as provided in Section 7.

"(5) This subdivision does not repeal or nullify, expressly or by implication, any constitutional or statutory exception to the right of access to public records or meetings of public bodies that is in effect on the effective date of this subdivision, including, but not limited to, any statute protecting the confidentiality of law enforcement and prosecution records.

"(6) Nothing in this subdivision repeals, nullifies, supersedes, or modifies protections for the confidentiality of proceedings and records of the Legislature, the Members of the Legislature, and its employees, committees, and caucuses provided by Section 7 of Article IV, state law, or legislative rules adopted in furtherance of those provisions; nor does it affect the scope of permitted discovery in judicial or administrative proceedings regarding deliberations of the Legislature, the Members of the Legislature, and its employees, committees, and caucuses." (Prop. 59, as approved by voters, Gen. Elec. (Nov. 2, 2004); see Cal. Const., art. I, § 3, subd. (b).)[4]

## DISCUSSION

Sutter's Place states that Proposition 59 establishes a constitutional right of access concerning the conduct of the people's business. This is an indisputable statement given the language of subdivision (b)(1). Sutter's Place then argues that Proposition 59 was specifically intended to eliminate the mental processes principle. For this, however, it specifies no language in the proposition to this effect. And it cites no authority for the point other than the arguments in the official ballot pamphlets distributed to voters that generally urge a yes vote because such would allow the public to see and understand the deliberative process and a no vote because the measure does not go far enough in guaranteeing the people access to government information. Via negative implication, it then argues that subdivision (b)(5), which provides that Proposition 59 does not alter any preexisting constitutional or statutory

---

[4] Further unspecified, numbered subdivision references are to the California Constitution, article I, section 3, subdivision (b).

exception to access, does not negate Proposition 59's elimination of the mental processes principle because the principle is rooted in (1) the constitutional separation-of-powers doctrine, a doctrine that, according to it, does not apply to governments below the state level, and (2) case law rather than statutory law. For this, it cites *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 36 [112 Cal.Rptr. 805, 520 P.2d 29] (*Strumsky*).[5] And also via negative implication, it argues that subdivision (b)(6), which provides that Proposition 59 does not alter confidentiality protections for the Legislature or the scope of discovery regarding deliberations of the Legislature, does not negate Proposition 59's elimination of the mental processes principle because (1) the subdivision's language is limited to the state level, and (2) the subdivision's language does not trump Code of Civil Procedure section 2017.010, which generally allows discovery of matters relevant or reasonably calculated to lead to the discovery of admissible evidence.[6]

The interpretation of Proposition 59 by Sutter's Place is insupportable.

■ " 'The principles of constitutional interpretation are similar to those governing statutory construction. In interpreting a constitution's provisions, our paramount task is to ascertain the intent of those who enacted it. [Citation.] To determine that intent, we "look first to the language of the constitutional text, giving the words their ordinary meaning." [Citation.] If the language is clear, there is no need for construction. [Citation.] If the language is ambiguous, however, we consider extrinsic evidence of the enacting body's intent.' [Citation.] [¶] ■ Similarly, '[i]n interpreting a voter initiative . . . , we apply the same principles that govern statutory construction. [Citation.] Thus, "we turn first to the language of the [initiative], giving the words their ordinary meaning." [Citation.] The [initiative's] language must also be construed in the context of the statute as a whole and the [initiative's] overall . . . scheme.' [Citation.] 'Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' [Citation.] Where there is ambiguity in the language of the measure, '[b]allot summaries

---

[5] This argument is without merit. The language in *Strumsky* seized upon by Sutter's Place is to the effect that "the separation of powers clause is inapplicable to government below the state level." (*Strumsky, supra,* 11 Cal.3d at p. 36.) "As the context of *Strumsky* reveals, however, the quoted statement related only to the question of whether local governmental bodies could exercise both judicial and legislative functions; neither *Strumsky* nor the authority it cites intimates any intention of altering the well-established California rule forbidding judicial inquiry into local legislative motivation." (*County of Los Angeles v. Superior Court, supra,* 13 Cal.3d at p. 727, fn. 5.)

[6] This argument is also without merit. As mentioned, the mental processes principle applies at the local level and forbids even relevant discovery.

and arguments may be considered when determining the voters' intent and understanding of a ballot measure.' " (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037 [56 Cal.Rptr.3d 814, 155 P.3d 226] (*Professional Engineers*).)

■ As suggested by *Savaglio, Commission, International Federation, BRV,* and *Los Angeles Unified,* Proposition 59 is simply a constitutionalization of the CPRA. As such, the proposition did not change existing law except as can be gleaned from its language. But there is absolutely no language in the proposition that can be construed as intending to change the fundamental, historically enshrined legal principle that precludes any judicially authorized inquiry into the subjective motives or mental processes of legislators. Moreover, subdivision (b)(5) and (6) of the proposition demonstrate a clear intent to maintain existing law and do not carve out the mental processes principle from this intent. And this maintenance necessarily includes preexisting common law and constitutional separation-of-powers principles recognizing the mental processes principle, as well as the CPRA's internal "catchall" exemption that implicitly recognizes the mental processes principle as an exception to the CPRA. (Gov. Code, § 6254, subd. (k) [incorporating other prohibitions established by law].)

■ The argument of Sutter's Place is, at best, a claim that Proposition 59 repealed the existing mental processes principle by implication. Viewed from this perspective, the claim also lacks merit.

■ The law shuns repeal by implication and, if possible, courts must maintain the integrity of both provisions. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 569 [71 Cal.Rptr.2d 731, 950 P.2d 1086].) "[R]epeal may be found where (1) 'the two acts are so inconsistent that there is no possibility of concurrent operation,' or (2) 'the later provision gives undebatable evidence of an intent to supersede the earlier' provision." (*Professional Engineers, supra,* 40 Cal.4th at p. 1038.)

For the reasons just expressed, we find neither that form of inherent inconsistency between Proposition 59 and the mental processes principle that would preclude their concurrent operation nor any evidence of an intent on the part of the voters to supersede, override, or alter the operation of the mental processes principle. Proposition 59's predecessors (the CPRA and prior hodgepodge of statutes and case law) and the mental processes principle have operated concurrently for many years, and Proposition 59 manifests an intent to affirm rather than change existing law.

Sutter's Place makes a brief argument in passing to the effect that respondent court abused its discretion even if Proposition 59 did not abrogate

the mental processes principle. It claims that respondent did not limit nondisclosure to "predecisional" documents. According to Sutter's Place, respondent "applied the [mental] process [principle] to documents which may have reflected the motives or thought processes of City Council members, whether before or after enacting legislation" whereas it should have limited the privilege to the motives or thought processes of City Council members "while enacting legislation." It then supports this point by referring to City's privilege logs, and claims that "many of the documents withheld, or information redacted from documents by the City, are dated on or after the year 2000, well after City's enactment of the [ordinance on November 9, 1999]. . . . Similarly, many of the documents have no dates, or are dated well before the City began considering enactment of the [ordinance] in 1998." We reject this argument.

Sutter's Place made open-ended discovery requests that were not limited to communications concerning the challenged ordinance. An example is the following request to produce: "All Documents presented to or considered by the City Council or any individual members of the City Council, in connection with the potential adoption of changes to the CITY's laws, rules and regulations respecting cardrooms and/or the adoption of the Ordinance, including without limitation, the legislative or administrative records of proceedings relating thereto, staff report, transcripts, Documents, testimony, and public and cardroom submittals." Thus, City was obligated to produce communications about potential card room law changes whether the changes were debated before or after adoption of the ordinance in question. In this context, if a communication is within the scope of the request (potential card room law changes), it is necessarily predecisional as to the decision within the scope of the request. The challenged ordinance is simply not the reference point for determining whether a communication about another decision was predecisional. Stated another way, if Sutter's Place wishes to obligate City to disclose communications about decisions other than the decision at issue, it may not trump City's mental processes claim on the basis that its discovery request seeks communications about decisions made after or well before the decision at issue. It follows that respondent did not abuse its discretion by failing to limit nondisclosure to documents preceding and "while enacting" the ordinance in question. (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272 [279 Cal.Rptr. 576, 807 P.2d 418] [test for abuse of discretion is whether the trial court exceeded the bounds of reason].)

In any event, on our own motion, we augmented the record under seal with the 19 documents reviewed in camera whose nondisclosure Sutter's Place is challenging here. We have reviewed the documents. Based on that review we conclude that respondent correctly upheld City's claim against disclosure based upon the mental processes principle. (Cf. *People v. Lawley* (2002) 27 Cal.4th 102, 160 [115 Cal.Rptr.2d 614, 38 P.3d 461].)

## DISPOSITION

The petition for writ of mandate, prohibition and/or certiorari is denied. Costs are awarded to the real party in interest.

Rushing, P. J., and Elia, J., concurred.

Petitioner's petition for review by the Supreme Court was denied June 25, 2008, S163100. George, C. J., and Corrigan, J., did not participate therein.